EDNA BARFIELD LEE, Plaintiff v. LINWOOD EARL LEE SR., Defendant

No. COA04-6

(Filed 7 December 2004)

**1. Divorce— equitable distribution—retirement plan—fees and penalties for transfer—correction of omission**

The trial court did not err by ordering a divorce plaintiff to pay all of the fees and penalties associated with a lump sum transfer of funds from defendant's retirement account. There were three qualified domestic relations orders concerning division of the parties' retirement plans, with taxes or fees assigned in the last two but not the first. This suggests that the

failure to assign taxes and fees in the first was an oversight; moreover, the amount at stake stems from incidental fees or penalties, not from the underlying substantive matter. The court's conclusion was supported by the findings and was a proper correction under Rule 60(a).

## 2. Divorce— equitable distribution—retirement plan—formula for share of benefit—unclear

There was credible evidence before the court in a divorce proceeding to support a finding about the calculation of additional pension payments from plaintiff to defendant. An order in the matter provided evidence of a telephone conversation with the company administrator in which the actuarial formula was set out.

## 3. Divorce— equitable distribution—early retirement benefit—calculation—evidence insufficient

Findings in an equitable distribution order regarding a pension benefit were not supported by the evidence where plaintiff retired at an earlier date than anticipated due to a disability. The correct value of defendant's share of plaintiff's pension as of the separation date is unclear from the evidence in the record.

## 4. Divorce— equitable distribution—retirement distribution—change in stock market

The trial court did not abuse its discretion in a divorce proceeding by denying a Rule 60(b) motion to set aside a judgment regarding a pension distribution. A change in the value of the stock market over the course of 5 years does not amount to an extraordinary or even unforeseeable circumstance.

Appeal by plaintiff and defendant from an order entered 20 May 2003 by Judge Lonnie Carraway in Lenoir County District Court. Heard in the Court of Appeals 21 September 2004.

*Mills & Economos, L.L.P., by Larry C. Economos, for plaintiff-appellant.*

*W. Gregory Duke for defendant-appellant.*

HUNTER, Judge.

Edna Barfield Lee ("plaintiff") appeals from an order entered 20 May 2003 pursuant to a hearing on a Rule 60(b)(6) motion. On appeal,

plaintiff contends error in the trial court's order that plaintiff pay all fees and penalties associated with the lump sum transfer of funds from Linwood Earl Lee Sr.'s ("defendant") retirement account, and that plaintiff pay defendant an additional sum of money monthly from her pension benefits. Defendant appeals from the same order, contending the trial court abused its discretion in denying defendant's Motion to Set Aside Judgment pursuant to Rule 60. As we find insufficient evidence to support the trial court's conclusion as to the additional payments by plaintiff, we reverse the order in part and remand for additional findings.

On 11 June 1998, plaintiff and defendant entered into a consent order to settle all outstanding claims between the parties pursuant to their separation and divorce. This consent order included settlement of all equitable distribution claims and specified that "[t]he parties' respective retirement plans shall be divided pursuant to qualified domestic relations order (QDRO) as outlined and detailed in the Findings of Fact contained in this Order."

The relevant findings of fact specified preparation of three QDROs, the first and third of which were contested by defendant in this action. The first ("QDRO 1"), divided defendant's retirement account. Plaintiff, on the five-year anniversary of the account, 1 January 2003, was to receive the greater of $402,393.00 (hereinafter "lump sum payment") or one-half of whatever monies were in the account on that date. The third QDRO ("QDRO 3") provided defendant with thirty-six percent of the plaintiff's monthly pension upon her retirement. After review and consent of the respective parties of each order, QDRO 1 was entered on 27 June 1998 and QDRO 3 was entered on 27 June 2001. QDRO 2 was not contested by either party.

On 10 March 2003, defendant filed a Motion in the Cause for Rehearing, and in the alternative, a Rule 60 Motion to Set Aside the terms of the equitable distribution settlement. Plaintiff responded with a motion for contempt. The trial court heard the respective motions on 23 April 2003 and entered an order on 20 May 2003 which: (1) denied defendant's request for judgment pursuant to his Rule 60(b) motion; (2) granted plaintiff's motion for contempt for failure to sign the necessary forms to effectuate the distribution of the lump-sum payment; (3) ordered all fees and penalties associated with the transfer of the lump sum payment to be paid by plaintiff; and (4) ordered plaintiff to pay defendant the difference between the actual amount received from plaintiff's pension plan and thirty-six percent

of her current monthly benefit, a sum of $326.96 per month. Both parties appeal from this order.

I.

We first address plaintiff's two assignments of error, that the trial court erred in (1) ordering plaintiff to pay all fees and penalties associated with the lump sum transfer of funds from defendant's retirement account, and (2) entering an order of additional payments to defendant from plaintiff's pension.

### 1. *Order of Payment of Fees and Penalties by Plaintiff*

[1] Plaintiff contends in her first assignment of error that the trial court erred in ordering plaintiff to pay all fees and penalties associated with the lump sum transfer of funds from defendant's retirement account. Plaintiff argues that the trial court's conclusion of law was not supported by the evidence and findings of fact. We disagree.

"It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Shear v. Stevens Building Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992). While findings of fact by the trial court in a non-jury case are conclusive on appeal if there is evidence to support those findings, conclusions of law are reviewable *de novo. Id.*

Here, plaintiff contends there was no competent evidence to support the trial court's findings of fact No. 8 and 9. The trial court found in No. 8 that: "[t]he QDRO which provides for the distribution of $402,393.00 to Plaintiff does not specify who will be assessed any taxes and/or surrender penalties." A review of QDRO 1 supports such a finding, as the order contains no mention of taxes or penalties. Plaintiff also contends there is no evidence to support Finding No. 9: "[t]here will be no tax consequences as a result of the transfer, but there will be a surrender fee of approximately $10,000.00." Here, after a careful review by this Court of both the record on appeal and the trial transcript, it appears that there is no competent evidence to support Finding No. 9. None of the evidence before the trial court addressed the issue of surrender fees, nor established the lack of tax consequences.

However, this Court concludes upon *de novo* review that Finding No. 8 supports the trial court's correction of the order in concluding

that "any fees, penalties, etc[.] associated with the transfer of the $402,393.00 to Plaintiff shall be paid by Plaintiff."

> " '[T]he court has inherent power to amend judgments by correcting clerical errors or supplying defects so as to make the record speak the truth. The correction of such errors is not limited to the term of court, but may be done at any time upon motion, or the court may on its own motion make the correction when such defect appears.' "

*Snell v. Board of Education*, 29 N.C. App. 31, 32, 222 S.E.2d 756, 757 (1976) (quoting *Shaver v. Shaver*, 248 N.C. 113, 118, 102 S.E.2d 791, 795 (1958)). "Although Rule 60(a) clearly grants the authority to the trial court to make clerical corrections, our appellate courts have consistently rejected attempts to change substantive provisions under the guise of making clerical changes." *Buncombe County ex rel. Andres v. Newburn*, 111 N.C. App. 822, 825, 433 S.E.2d 782, 784 (1993). "A change in an order is considered substantive and outside the boundaries of Rule 60(a) when it alters the effect of the original order." *Id.*

In *Ice v. Ice*, this Court found that an award of interest on a distributive award was not a substantive change, as "[t]he subject of the litigation . . . was the amount of the distributive award; interest was only incidental and tangential[.]" *Ice*, 136 N.C. App. 787, 792, 525 S.E.2d 843, 847 (2000). The *Ice* Court found the situation analogous to that in *Ward v. Taylor*, 68 N.C. App. 74, 314 S.E.2d 814 (1984), where a previous order was amended to allow a surveyor to recover costs associated with the surveying work done for trial, on the grounds that the " '[initial] failure to allow and tax costs may be considered an "oversight or omission" in an order.' " *Ice*, 136 N.C. App. at 792, 525 S.E.2d at 846 (quoting *Ward*, 68 N.C. App. at 80, 314 S.E.2d at 819-20).

Here, fees and penalties arising from the transfer of the lump sum payment were not assigned to either party or addressed in QDRO 1. However, such an assignment of taxes was made in both QDROs 2 and 3. The failure to include such an assignment in QDRO 1, while including it in QDROs 2 and 3, suggests that such an exclusion was an "oversight or omission." Additionally, as in *Ice*, the issue of fees or taxes related to the distribution do not affect the substance of the award itself. "[T]he amount of money involved is not what creates a substantive right; rather, it is the source from which this money is derived." *Ice*, 136 N.C. App. at 792, 525 S.E.2d at 847. Here, any amount at stake would stem from the incidental fees or penalties,

not from the underlying substantive matter of the distributive award. Accordingly, the trial court's conclusion of law was supported by the findings of fact and was a proper correction effectuated through Rule 60(a).

## 2. Order of Additional Pension Payments to Defendant

[2] Plaintiff contends in her second assignment of error that the trial court's order of additional pension payments by plaintiff to defendant was not properly supported by evidence and findings of fact, and that the trial court lacked authority to make such an order. The trial court ordered that:

> 4. Plaintiff shall pay to Defendant the difference between the $118.00 per month Defendant currently receives and 36% of her current monthly benefit, which is $1,236.00. In other words, $1,236.00 x 36% = $444.96-118.00 = $326.96. Plaintiff shall pay the sum of $326.96 per month commencing June 1, 2003.

Plaintiff argues that the evidence recited in Finding No. 4, regarding the formula used by the plan's administrators in calculation of the amount sent to defendant was not properly before the trial court. She therefore contends it was not competent evidence to support Finding No. 4 or, by extension, Findings No. 15 and 16, which rely upon it. Finding No. 4 states:

> 4. That DuPont determined Plaintiff's accrued retirement benefits as of December 31, 1997 to be $1,051.98 per month. Plaintiff subsequently left the employment of DuPont on disability as of November 30, 2001. DuPont subsequently determined that Defendant's thirty-six percent (36%) of the monthly benefit was $118.00 per month. DuPont's Benefits Department arrived at this figure by multiplying the monthly benefit of $1,051.98 by the lesser of the Plaint's [sic] conversion factor for determining actuarial equivalence (32.99042%) or the Plan's early retirement reduction factor (100%) = $1,501.98 [sic] x 32.99042% = $347.05. This amount was then multiplied by the 36% specified in the Order; #347.05 x 36% = $124.94. This amount is payable over the Defendant's lifetime. The plan's conversion factor for converting a payment from the Plaintiff/participant's lifetime to the Defendant/alternate payee's lifetime (based on the birthdates of participant and alternate payee) is 93.81626%. The resulting benefit payable to Defendant is $124.94 x 93.81626% = $117.21. This amount was rounded up to $118.00 per month.

"A trial court may take judicial notice of earlier proceedings in the same cause." *In re Isenhour*, 101 N.C. App. 550, 553, 400 S.E.2d 71, 73 (1991). Here, an order filed 22 October 2002 in this matter provided evidence of a telephone conversation with a DuPont administrator, in which the actuarial formula used by DuPont for calculating defendant's share of the benefit was set out. As there was credible evidence properly before the trial court to support Finding No. 4, it is therefore deemed conclusive.

[3] Findings No. 15 and 16, both of which are mixed findings of fact and conclusions of law, are not supported by credible evidence, however. The trial court found in No. 15 that:

15. In regard[s] to Defendant's motion regarding the payment of thirty-six percent (36%) of Plaintiff's monthly retirement benefit to Defendant, the Court finds that DuPont's benefits administrator's calculations do not reflect 36% of the monthly benefit of $1,051.98.

QDRO 3 awarded defendant thirty-six percent of plaintiff's accrued pension benefit as follows:

1. Defendant/Alternate Payee is awarded thirty-six (36%) of the Participant's accrued benefit as of December 31, 1997, that being the parties' date of separation.

2. The Defendant/alternate payee shall receive his benefit payable in the form of a monthly annuity over the alternate payee's lifetime. The alternate payee shall begin receiving his share of the accrued benefit upon the Participant's retirement date.

The evidence submitted showed that as of the parties' separation date, plaintiff's pension was valued at $1,051.98 per month, however plaintiff took early retirement for health reasons and was granted incapability pension benefits by her employer, DuPont, on 31 November 2001. The value of defendant's monthly annuity, as calculated by the plan administrator at that time, was $118.00 per month. Defendant moved for a contempt motion on 9 October 2002 for plaintiff's failure to pay a full thirty-six percent of the pension amount. An order on the matter was issued on 22 October 2002, finding the parties had not yet received a satisfactory explanation from the plan administrator as to the calculation of plaintiff's retirement benefits and defendant's monthly share under QDRO 3, and demanding a detailed and written explanation as to the calculation be submitted to the trial court by the plan administrator by November of 2002. The

record on appeal does not reflect that any such satisfactory explanation was submitted to the trial court on this matter.

QDRO 3 specified that defendant's share was limited to the value of the pension as of the retirement date, but that defendant was not eligible to receive the share until plaintiff's retirement. Plaintiff's retirement at a date earlier than anticipated by the parties due to disability therefore raises an unanswered question as to the correct valuation of the pension amount under the terms of QDRO 3. In light of plaintiff's early retirement, the correct value of defendant's share of plaintiff's pension as of the separation date is unclear based on the evidence of record. We therefore find that Finding No. 15 is not supported by competent evidence.

In Finding No. 16, the trial court stated:

16. Further the Court finds that the 36% amount should be paid from Plaintiff's current monthly benefit which is $1,236.00 per month rather than the $1,051.98 per month as specified in the Qualified Domestic Relations Order.

QDRO 3 expressly specified that defendant's share of plaintiff's accrued benefit was to be determined as of the date of the parties' separation, although distributed upon retirement. An increase in value which occurred after the date of separation due to plaintiff's disability would therefore not be properly considered in determining defendant's share of the pension. As competent evidence does not exist to support this finding, the trial court's conclusion that the benefit calculated was not equitable and was inconsistent with QDRO 3 is in error.

As we find a lack of competent evidence in the record to support Findings No. 15 and 16 and the resulting conclusions of law, we reverse this portion of the order and remand for the trial court to receive additional evidence and make further findings as to the value of defendant's thirty-six percent share of plaintiff's retirement benefits as of 31 December 1997.

II.

[4] We next address defendant's assignment of error. Defendant contends the trial court abused its discretion in denying defendant's Motion to Set Aside Judgment pursuant to Rule 60(b) of the Rules of Civil Procedure with regards to review and reconsideration of the lump sum distribution required by QDRO 1.

QDRO 1 ordered:

> 1. Entitlement: As part of the equitable distribution of the parties marital property, Plaintiff is entitled to an assignment of a part of the Defendant's Profit Sharing Trust and ESOP . . . more specifically as follows: that the Plaintiff, Edna B. Lee, shall receive the greater sum of either $402,393.00 or one-half (½) of whatever monies are in the Defendant's Profit Sharing Trust and ESOP . . . as of January 1, 2003.

The sum of $402,393.00 was equal to $337.878.28, one-half of the date of separation value of the account of $675,756.56, multiplied times the annual interest rate of three and one-half percent for five years, until the date of distribution. The value of defendant's retirement account significantly decreased to $498,000.00 by 1 January 2003. Defendant argues that as the decrease was due to the poor economy and no fault of his own, he is entitled to review and reconsideration of the order under Rule 60(b)(6). We disagree.

"Although section (6) of Rule 60(b) has often been termed 'a vast reservoir of equitable power,' a court cannot set aside a judgment pursuant to this rule without a showing (1) that extraordinary circumstances exist and (2) that justice demands relief." *Thacker v. Thacker*, 107 N.C. App. 479, 481, 420 S.E.2d 479, 480 (1992) (quoting *Anderson Trucking Service v. Key Way Transport*, 94 N.C. App. 36, 40, 379 S.E.2d 665, 667 (1989)) (citation omitted). "Further, the remedy provided by Rule 60(b)(6) is equitable in nature and is directed to the discretion of the trial judge. This Court will not disturb such a discretionary ruling without a showing of an abuse of that discretion." *Id.* at 482, 420 S.E.2d at 480-81 (citation omitted).

Here, defendant alleged that the economic downturn in the stock market provided extraordinary circumstances sufficient to invoke an equitable remedy under Rule 60(b). However, as the North Carolina Supreme Court has previously noted, "[s]tock market prices, as even the most casual observer knows, change constantly and the market price at the end of a thirty-day period would almost always be different from that announced thirty days before." *Sheffield v. Consolidated Foods*, 302 N.C. 403, 422, 276 S.E.2d 422, 435 (1981). A change in the value of the stock market over the course of five years does not amount to an extraordinary or even unforseeable circumstance. There was therefore no abuse of discretion by the trial court in its denial of defendant's Rule 60(b) motion to revise the lump sum distribution portion of the equitable distribution order.

In summary, as there was sufficient evidence to support the trial court's order for plaintiff to pay taxes and fees associated with distribution of defendant's retirement account, and as there was no abuse of discretion by the trial court in denying defendant's Rule 60(b) motion for review and reconsideration of the lump sum distribution, the order is affirmed in part. As there was insufficient evidence to support the conclusion that defendant was entitled to additional payments by plaintiff under the equitable distribution agreement, the order is reversed in part and remanded for further findings.

Affirmed in part, reversed in part, and remanded in part.

Judges WYNN and THORNBURG concur.