McGEE, Chief Judge.
*720 Stanley Boyd Green ("Defendant") appeals from an equitable distribution order and judgment that, inter alia , classifies compensation he received as a part owner of a law firm as "deferred compensation," and thus divisible property pursuant to N.C. Gen. Stat. § 50-20. Defendant also appeals from an alimony order and judgment requiring him to pay *721 $6,000.00 per month in alimony to his former wife, Jennifer Cleland Green ("Plaintiff"). We reverse the alimony order and portions of the equitable distribution order, and remand for further proceedings.
I. Background
Plaintiff and Defendant married on 22 October 1994 and had four children together. Plaintiff and Defendant separated on 25 June 2013. Plaintiff graduated from law school in 1992 and worked as a law clerk at the North Carolina Court of Appeals for two to three years. Defendant graduated from law school after the parties were married, clerked for one year at the North Carolina Court of Appeals, and was then hired by the Womble Carlyle Sandridge & Rice law firm in Winston-Salem in 1999. Prior to the parties' separation, Plaintiff had not worked outside the home since the birth of their first child in 1995, except for a few weeks writing subrogation letters early in the couple's marriage. The parties agreed in 2000 that Plaintiff's law license would become inactive, and Plaintiff has spent the last twenty years caring for their children. After the parties separated in 2013, Plaintiff was employed part-time and earned a net income of $1,505.98 per month.
Defendant joined the firm of Strauch, Fitzgerald and Green ("the firm") as a founding partner in 2009 where Defendant was initially a twenty-five percent shareholder. By the date of separation, Defendant was a 26.32 percent shareholder and, after the date of separation, he became a forty percent shareholder when one of the partners left the *48 firm.[1] The firm is a Subchapter C corporation and, as such, shareholders are paid only when there are profits from which to pay them.
In 2009, Jack Strauch ("Strauch") brought to the firm a contingency fee case, that arose out of a contract dispute from the 2010 Vancouver Winter Olympics. The firm represented Cruise Connections, a U.S. corporation based in Winston-Salem, against the Royal Canadian Mounted Police (the " Cruise case"). Though the Cruise case had already been dismissed by the federal district court at the time the case was brought to the firm, Defendant assisted Strauch with developing arguments on appeal, and the firm obtained a reversal in the Cruise case in April 2010. See generally Cruise Connections Charter Mgmt. 1, LP v. Attorney General of Canada , 600 F.3d 661 (D.C. Cir. 2010).
*722 After Plaintiff and Defendant separated, the firm obtained summary judgment on liability in the Cruise case. Defendant, Strauch, and others in the firm worked with experts, drafted pre-trial memoranda, developed motions in limine , and participated in the damages trial. The firm obtained a $19.1 million verdict for its client at trial. While the matter was on cross-appeal, the Cruise case settled in mediation for $16.9 million in December 2014. The settlement yielded the firm a fee of $5,492,500.00.
Although the Cruise case was a contingency case, the firm kept detailed billing records that showed members of the firm had worked 6,608 total billable hours on the case. The hours logged prior to the separation of Plaintiff and Defendant totaled 5,159, being seventy-eight percent of the total billed hours. On 13 March 2015, under the firm's compensation structure in existence in 2015, Defendant received a payment of $1,909,277.00 from the Cruise case. After accounting for taxes, Defendant received $992,844.00 of the Cruise case fee.
Plaintiff filed a complaint against Defendant for child custody, child support, divorce from bed and board and injunctive relief on 14 June 2013. Plaintiff filed a second complaint on 2 July 2013 for equitable distribution, alimony, post-separation support, and attorney's fees. Defendant filed an answer and counterclaim in both actions on 21 August 2013. The two actions were consolidated, and the issues of equitable distribution and alimony were tried in January 2016. The trial court entered an equitable distribution judgment and order (the "equitable distribution order") on 22 February 2016, and entered an alimony judgment and order (the "alimony order") on 2 March 2016.
In determining the value of the firm on the date of separation and the current value, the trial court relied on the testimony of Defendant's expert, Betsy Fonvielle ("Fonvielle"), who testified that the most appropriate valuation method was the "capitalized returns" method. Fonvielle testified that the capitalized returns method over-emphasized the impact of the Cruise case, so Fonvielle determined Defendant's interest in the current value of the firm by averaging the capitalized return figure with the "direct market data calculation," and determined the current value of the firm to be $409,000.00 (the value the trial court found). The trial court also found that Defendant's interest in the firm on the date of separation was $314,476.00. It further determined that the $94,524.00 difference between the current value of Defendant's interest and the value of Defendant's interest on the date of separation was a "passive" increase and therefore divisible property subject to equitable distribution. The trial court also found as fact that $636,575.00 of the income Defendant received from the Cruise case was "divisible property" and constituted *723 "deferred compensation."[2] *49 The trial court ordered half of that amount ($318,287.50) to be paid to Plaintiff.
The total marital estate was valued at $1,464,407.38. Pursuant to the equitable distribution order, Plaintiff was ultimately awarded fifty-three percent of the total marital estate, being $776,135.91, which included the payment from the Cruise case compensation and a $154,076.57 distributive award. The marital home, with a net value of $41,867.26 after accounting for appreciation in the home and subtracting the mortgage still due on the home, was also distributed to Plaintiff as sole owner. The mortgage balance on the marital residence was $368,448.74 and was distributed to Plaintiff. Pursuant to the alimony order, Defendant was ordered to pay permanent alimony of $6,000.00 per month. Defendant appeals.
II. Analysis
Defendant argues the trial court erred by: (1) classifying the Cruise case compensation as deferred compensation, a type of marital property pursuant to N.C.G.S. § 50-20(b)(1) ; (2) classifying the Cruise case compensation as divisible property pursuant to N.C.G.S. § 50-20(b)(4)(b) ; (3) incorrectly valuing Defendant's interest in the firm and distributing the post-separation increase in the value of the firm; (4) concluding as a matter of law that the entire increase in value of the firm from the date of separation to the date of distribution was a passive increase, and thus divisible property; (5) failing to order Plaintiff to remove Defendant from the note and deed of trust on the marital home; (6) ordering an unequal distribution funded by a distributive award where there was no evidence Defendant had the liquid funds and ability to pay the distributive award or that the presumption of an in-kind distribution was rebutted; and (7) determining the amount of alimony to be awarded to Plaintiff, and Defendant's ability to pay that amount.
A. Classification of the Cruise Case Compensation
Defendant argues the trial court erred by classifying the income he received from the firm as a result of the Cruise case settlement as both divisible property and deferred compensation.
*724 It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. While findings of fact by the trial court in a non-jury case are conclusive on appeal if there is evidence to support those findings, conclusions of law are reviewable de novo .
Lee v. Lee , 167 N.C. App. 250, 253, 605 S.E.2d 222, 224 (2004) (internal quotations omitted). It is also well settled that "[q]uestions of statutory interpretation are ultimately questions of law for the courts and are reviewed de novo." In re Summons of Ernst & Young , 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009) (citation omitted).
Pursuant to N.C. Gen. Stat. § 50-20, the trial court in an equitable distribution case "shall ... provide for an equitable distribution of the marital property and divisible property between the parties[.]" N.C. Gen. Stat. § 50-20(a) (2015). As relevant here, marital property includes "all vested and nonvested pension, retirement, and other deferred compensation rights[.]" N.C.G.S. § 50-20(b)(1) (2015). Divisible property, as relevant to the present case, is defined as:
all real and personal property [including] [a]ll property, property rights, or any portion thereof received after the date of separation but before the date of distribution that was acquired as a result of the efforts of either spouse during the marriage and before the date of separation, including, but not limited to, commissions, bonuses, and contractual rights.
N.C. Gen. Stat. § 50-20(b)(4)(b) (2015).
In the equitable distribution order in the present case, the trial court found as fact that "a portion of the Cruise Case fee received by [Defendant] after the date of separation is divisible property separate from the value of [t]he [f]irm and is considered by the [c]ourt as deferred compensation for work performed during the marriage." (emphasis added). We initially note that the trial court appears to have found the Cruise case compensation to be both divisible property, pursuant to N.C.G.S. § 50-20(b)(4)(b), and *50 deferred compensation, a type of marital property pursuant to N.C.G.S. § 50-20(b)(1). The "classification of property in an equitable distribution proceeding requires the application of legal principles," and we therefore review de novo the classification of property as marital, divisible, or separate. *725 Romulus v. Romulus , 215 N.C. App. 495, 500, 715 S.E.2d 308 (2011) (citation omitted). The Cruise case compensation cannot be both marital and divisible property and, as such, we inquire separately into whether the income is appropriately classified as deferred compensation or divisible property.
1. Deferred Compensation
The present case represents the first occasion North Carolina Courts have had to consider whether a contingent fee, collected after the date of separation but where the contract under which the contingent fee was earned was entered into during a marriage, qualifies as "deferred compensation" for the purposes of equitable distribution under N.C.G.S. § 50-20(b)(1). We first consider the text of the statute, which provides that "[m]arital property includes all vested and nonvested pension, retirement, and other deferred compensation rights." N.C.G.S. § 50-20(b)(1). The statute does not define the term "deferred compensation," and we therefore must employ methods of statutory construction in order to discern the intent of the General Assembly in drafting the statute. See Stevenson v. Durham , 281 N.C. 300, 303, 188 S.E.2d 281, 283 (1972) ("The primary rule of statutory construction is that the intent of the legislature controls the interpretation of a statute.").
One cannon of statutory construction employed by our Courts is ejusdem generis , which states that "where general words follow a designation of particular subjects or things, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character and nature as those specifically enumerated." State v. Fenner , 263 N.C. 694, 697-98, 140 S.E.2d 349, 352 (1965) ; see also Knight v. Town of Knightdale , 164 N.C. App. 766, 769, 596 S.E.2d 881, 884 (2004). Applying the cannon to the present case, we discern that the General Assembly meant for "deferred compensation," a general phrase, to include only items "of the same kind" as those words which come before it in N.C.G.S. § 50-20(b)(1). We do not believe a spouse's share of a contingent fee earned by virtue of the spouse's ownership interest in a law firm is "of the same type" as vested and nonvested pensions and retirement accounts, which suggests the General Assembly did not mean to include contingency fees to be included in the term "deferred compensation" in N.C.G.S. § 50-20(b)(1).
Also considering dictionary definitions leads to the same result. A contingent fee is defined as "[a] fee charged for a lawyer's services only if the lawsuit is successful or is favorably settled out of court." BLACK'S LAW DICTIONARY 338 (8th ed. 2004) (emphasis added). Deferred *726 compensation, on the other hand, "generally refers to money which, by prior arrangement , is paid to the employee in tax years subsequent to that in which it is earned." Michael J. Canan, Qualified Retirement and Other Employee Benefit Plans § 1.6 (West 1994) (emphasis added); see also BLACK'S LAW DICTIONARY 421 (6th ed. 1990) (defining "deferred compensation" as "compensation that will be taxed when received and not when earned"). Defendant received the Cruise case fee only after the lawsuit was favorably settled out of court, and Defendant received the income in the year in which it was earned and after the date of the parties' separation.
"[A]s a general matter, retained earnings of a corporation are not marital property until distributed to the shareholders." Allen v. Allen , 168 N.C. App. 368, 375, 607 S.E.2d 331, 336 (2005). "[F]unds received after the separation may appropriately be considered as marital property when the right to receive those funds was acquired during the marriage and before the separation[.]" Hill v. Hill , --- N.C. App. ----, ----, 781 S.E.2d 29, 40 (2015) (quotation omitted). Because the Cruise case had not been settled at the time of the parties' separation, Defendant had no right to any income from the Cruise case at that time.
*51 Even if the Cruise case compensation was properly classified as deferred compensation, under N.C.G.S. § 50-20.1(d), an award of deferred compensation is based on the accrued benefit calculated as of the date of separation. In the present case, Defendant had no accrued benefit at the date of the parties' separation-Defendant was not entitled to any payment from his or the firm's work on the Cruise case that had not yet been settled and would not be settled until months after the parties separated.
In Musser v. Musser , 909 P.2d 37 (Okla. 1995), the Oklahoma Supreme Court confronted the precise question we confront in this case: whether a husband's interest in a contingency fee case was marital property. In holding it was not, that court stated:
[A]n attorney is not entitled to receive payment for services rendered unless the client succeeds in recovering money damages. For this reason, we conclude that because [the h]usband in the case at bar is not certain to receive anything under the contingency fee contracts, those contingency fee cases should not be considered marital property. At most, [the h]usband has a potential for earning income in the future. He is not assured of earning anything for his efforts nor does he acquire a vested interest in the income *727 from those cases unless his client recovers, an event impossible to accurately predict. Therefore, we deem pending contingency fee cases of a law firm to be future income and not a part of the marital assets.
Id. at 40 (emphasis omitted). We agree with the reasoning of the Oklahoma Supreme Court. At the time Plaintiff and Defendant separated, Defendant and the firm were not certain to recover anything from the Cruise case. At most, Defendant had the potential to earn income from the case in the future. Therefore, the Cruise case compensation was not deferred compensation.
2. Divisible Property
In addition to classifying the Cruise case compensation as deferred compensation, the trial court also classified it as divisible property. As noted, divisible property
means all real and personal property [including] [a]ll property, property rights, or any portion thereof received after the date of separation but before the date of distribution that was acquired as a result of the efforts of either spouse during the marriage and before the date of separation, including, but not limited to, commissions, bonuses, and contractual rights.
N.C.G.S. § 50-20(b)(4)(b). Plaintiff argues the Cruise case compensation received by Defendant after the date of separation is divisible property because, pursuant to N.C.G.S. § 50-20(b)(4)(b), divisible property includes contractual rights. Plaintiff argues that the rights under the Cruise contingent fee contract "are divisible property to the extent of pre-separation labor pursuant to the contract." As explained above, however, Defendant did not acquire any right to receive income from the Cruise case prior to the date of the parties' separation. In addition, the contingency fee contract was between the firm and its client, not between Defendant and the client. Plaintiff provides no case law, and we have found none, holding that legal fees earned on a contingency basis should be considered under the contractual rights clause of N.C.G.S. § 50-20(b)(4)(b).
On appeal, Plaintiff raises a new argument not considered by the trial court as to why the Cruise case compensation was properly classified as divisible property. Plaintiff argues the Cruise case compensation is appropriately considered a bonus, making it a type of divisible property pursuant to N.C.G.S. § 50-20. "A bonus is something given in addition to *728 what is ordinarily received by, or strictly due to, the recipient." Pugh v. Scarboro , 200 N.C. 59, 62, 156 S.E. 149, 150 (1930) ; see also BLACK'S LAW DICTIONARY 194 (8th ed. 2004) (defining "bonus" as "[a] premium paid in addition to what is due or expected"). The income Defendant received from the Cruise case was not a premium paid to the firm in addition to the money that was due to it; rather, the Cruise case compensation was the compensation Defendant received by virtue of his ownership interest in the firm. The trial court erred in determining that the Cruise case compensation was divisible property, and that compensation is thus *52 appropriately labeled as separate property of Defendant.
Given our determination that the Cruise case compensation is separate property, we decline to address Defendant's remaining arguments regarding the Cruise case compensation, including whether the trial court appropriately found that the increase in the firm's value was "passive" and therefore divisible pursuant to N.C.G.S. § 50-20(b)(4)(a). In viewing the Cruise case compensation as separate property, on remand the trial court will consider anew whether there was an increase in the firm's value and, if so, again consider whether that increase was "passive" or "active." We express no opinion on the matter, and leave it to the trial court's determination.
B. Distribution of the Mortgage Debt
Defendant argues that the trial court erred by failing to distribute the mortgage debt to Plaintiff by not ordering Plaintiff to remove Defendant's name from the promissory note and deed of trust for the marital residence. We first note that Defendant never requested that the trial court order Plaintiff to refinance the existing mortgage, and offered no evidence that Plaintiff had the ability to refinance the existing mortgage in her name alone. Because Defendant failed to argue to the trial court that his name must be removed from the note and deed of trust, he has waived appellate review of the issue. See, e.g. , Bowles Auto., Inc. v. NC DMV , 203 N.C. App. 19, 29, 690 S.E.2d 728, 734 (2010) (holding that an appellant "waived appellate review" of an issue due to its failure to raise that issue at trial).
Even assuming the issue was not waived, we hold that the trial court did not fail to distribute the mortgage debt.
Equitable distribution is vested in the discretion of the trial court and will not be disturbed absent a clear abuse of that discretion. Only a finding that the judgment was unsupported by reason and could not have been a result *729 of competent inquiry, or a finding that the trial judge failed to comply with the statute will establish an abuse of discretion.
Wiencek-Adams v. Adams , 331 N.C. 688, 691, 417 S.E.2d 449, 451 (1992) (citations omitted).
Defendant cites Khajanchi v. Khajanchi , 140 N.C. App. 552, 537 S.E.2d 845 (2000), which states that "the [trial] court must distribute the marital property and debts." Id. at 557, 537 S.E.2d at 849. Since Defendant's name remains on the note and deed of trust, Defendant argues, he would be liable should Plaintiff fail to pay the mortgage. We hold that the trial court did not abuse its discretion in ordering Plaintiff to pay the note and deed of trust, but not ordering Plaintiff to have Defendant's name removed from those documents and secure a new loan in her name only. We find no merit in Defendant's argument that the trial court failed to distribute the mortgage debt as part of the equitable distribution judgment. The trial court clearly distributed the debt owed on the marital home to Plaintiff. Finding of fact 34 of the trial court's order states that "[t]he ... mortgage on the marital residence ... had a balance of $364,448.74 on the date of separation. This debt is distributed to [Plaintiff]."
While Defendant argues that the trial court erred by failing to distribute the mortgage debt at all, he actually takes issue with the method in which the mortgage debt was distributed. But Defendant has failed to make that argument in his brief to this Court. In his brief, Defendant only argues that the trial court "in actuality ... failed to" distribute the mortgage to Plaintiff, although it "found it was distributing the mortgage to Plaintiff." Therefore, any argument that the trial court erred in the method in which it distributed the mortgage debt was abandoned by Defendant's failure to raise it in his brief. N.C.R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned.").
Even if the issue were not abandoned, Defendant cites no authority requiring that a trial court order a party receiving the marital home in an equitable distribution action to refinance the mortgage debt to have the other party removed from the note and deed of trust. In the present case, the trial court heard testimony about the valuation of the *53 marital residence at the time it was purchased in 2006, as well as the valuation of the residence at the time of separation. The trial court also heard testimony regarding the remaining balance on the mortgage at the time of trial, and the monthly mortgage payment for principal, interest, taxes, and insurance. *730 The trial court's order clearly shows that it took these factors into account in distributing the marital property and debts. The equitable distribution order includes a lengthy discussion of the marital property, including the differing valuations of the property, each parties' contentions about the valuations, and the balance of the mortgage. The trial court then specifically ordered that "[t]he marital residence [is] distributed to [ ] Plaintiff," and that Plaintiff was "distributed a net value of $41,867.26," which took into account the remaining balance on the mortgage.
The order also mandated that Plaintiff "shall assume and pay in full according to the terms of the present mortgage at Wells Fargo Mortgage that is a lien on [the marital residence] until such time as she sells the residence or refinances it." (emphasis added). This portion of the order demonstrates that the trial court took all of the relevant factors into account and determined that Plaintiff was to assume the responsibility to pay the already existing mortgage on the residence, rather than obtain a new mortgage. The record, transcript, and order combine to show that: (1) Defendant never requested the trial court order Plaintiff to refinance the mortgage; (2) Defendant did not offer any evidence that Plaintiff had the financial resources to do so; (3) the trial court's order included a notation that Plaintiff had made all payments on the existing mortgage as of the date of the order; and (4) the trial court carefully considered the evidence regarding the marital home and the mortgage; thus, we decline to hold that the trial court's decision "could not have been the result of a reasoned decision." State v. Wilson , 313 N.C. 516, 330 S.E.2d 450 (1985). "[E]quitable distribution is vested in the discretion of the trial court and will not be disturbed absent a clear abuse of that discretion." Adams , 331 N.C. at 691, 417 S.E.2d at 451 (citations omitted). We hold the trial court did not abuse its discretion in distributing the mortgage debt.
C. Available Liquid Funds for the Distributive Award
Defendant next argues the trial court erred by ordering an unequal distribution of marital property because there was no evidence that he had the liquid funds and ability to pay the distributive award. We disagree. When a distributive award is ordered, the court must "make the required findings that defendant had sufficient liquid assets from which to pay the distributive award." Squires v. Squires , 178 N.C. App. 251, 267, 631 S.E.2d 156, 165 (2006). "If a party's ability to pay an award with liquid assets can be ascertained from the record, then the distributive award must be affirmed."
*731 Peltzer v. Peltzer , 222 N.C. App. 784, 791, 732 S.E.2d 357, 362 (2012). In the present case, there is plenary evidence in the record that Defendant had sufficient liquid assets to pay the distributive award. The trial court found that Defendant had separate assets[3] which were valued at over $276,500.00, in addition to a whole life insurance policy with a face value of $1,275,000.00, and an investment portfolio with Northwestern Mutual with a balance of $1,275,268.80.
Defendant further argues that there was no evidence that the presumption of an in-kind distribution was rebutted.
It shall be presumed in every action that an in-kind distribution of marital or divisible property is equitable. This presumption may be rebutted by the greater weight of the evidence, or by evidence that the property is a closely held business entity or is otherwise not susceptible of division in-kind. In any action in which the presumption is rebutted, the court in lieu of in-kind distribution shall provide for a distributive award in order to achieve equity between the parties. The court may provide for a distributive award to facilitate, effectuate or supplement a distribution of marital or divisible property. The court may provide *54 that any distributive award payable over a period of time be secured by a lien on specific property.
N.C. Gen. Stat. § 50-20(e) (emphasis added). In the present case, the presumption is rebuttable because Defendant's interest in the firm is a closely-held business interest, and the trial court found that, due to the nature of some of the marital property, it was impractical for an in-kind distribution. While the trial court specifically referred to the presumption as "not rebutted," we find the trial court's statement is harmless error because the court proceeded to find that an in-kind distribution was impractical and thus rebuttable under the statute. We affirm the trial court's determination that the distribution was not susceptible to division in-kind, and that Defendant had sufficient liquid assets to pay the distributive award.
D. Defendant's Ability to Pay Alimony
Defendant argues that the trial court's findings of fact are insufficient for this Court to review his ability to pay alimony. Whether a spouse is entitled to an award of alimony is a question of law, which we review *732 de novo . Collins v. Collins , 243 N.C. App. 696, ----, 778 S.E.2d 854, 856 (2015). "The amount of alimony is determined by the trial judge in the exercise of his sound discretion and is not reviewable on appeal in the absence of an abuse of discretion." Quick v. Quick , 305 N.C. 446, 453, 290 S.E.2d 653, 658 (1982). Defendant contends the trial court failed to make a finding of fact regarding his current actual income-a required finding before using prior years' income to determine whether he had the ability to pay the alimony award.
"Alimony is ordinarily determined by a party's actual income, from all sources, at the time of the order." Kowalick v. Kowalick , 129 N.C. App. 781, 787, 501 S.E.2d 671, 675 (1998) (citation and emphasis omitted). As this Court has previously held:
Unless the [trial] court finds that a supporting spouse is deliberately depressing his income in disregard of his marital obligation to provide reasonable support, and applies the "capacity to earn" rule, a supporting spouse's ability to pay alimony is ordinarily determined by his income at the time the award is made.
Whedon v. Whedon , 58 N.C. App. 524, 527, 294 S.E.2d 29, 32 (1982) (emphasis omitted); see also Megremis v. Megremis , 179 N.C. App. 174, 182, 633 S.E.2d 117, 123 (2006) ("Ordinarily, alimony is determined by a party's actual income at the time of the alimony order. It is well-established that a trial court may consider a party's earning capacity only if the trial court finds the party acted in bad faith." (citations omitted)).
In the present case, the trial court made the following findings of fact regarding Defendant's income and ability to pay:
24. [Defendant] is one of two owners of his law firm and his gross monthly income in 2014 averaged $24,333.00. In 2015 his monthly income averaged $42,458.00 (excluding a contingency fee payment he received in the Spring of 2015.) His affidavit lists his average gross monthly income as $23,280.00. Using the averages on his end of year income statements for 2014 and 2015 for mandatory deductions, the [c]ourt finds that his average gross monthly income for 2014 and 2015 was $33,395.00 His average monthly mandatory deductions were $14,012.00 and his net wages were $19,383.00.
25. [Defendant] has an investment account at Northwestern Mutual that had an investment total as *733 of December 16, 2015 of $1,275,268.80. The parties stipulated that $916,433.00 is owed in federal and state taxes on the very large contingency fee [Defendant] received after the date of separation which the [c]ourt ruled was part divisible property in the [e]quitable [d]istribution case.
....
35. The [c]ourt finds that an appropriate gross amount for [Defendant] to pay [Plaintiff] as alimony is the sum of $6,000.00 per month. This sum is reasonable and necessary to provide [Plaintiff] with the funds needed to meet her reasonable needs according to her accustomed standard of living. Defendant has the means and ability to *55 pay alimony of $6,000.00 per month to Plaintiff.
36. Defendant offered evidence showing, if he earns $330,146.00 annually (as opposed to $400,000.00 annually) if he pays $5300.00 in taxable alimony per month, and he pays $3184.00 per month in child support, he will have $9,304.00 per month to meet his own living expenses.
....
39. Based upon the factors set forth in [N.C. Gen. Stat. §] 50-16.3A and the [c]ourt's discretion, the award of alimony as ordered herein is equitable under the circumstances of this case.
40. [Defendant] has the ability to pay the support ordered herein.
While the alimony order contained findings of fact on Defendant's 2014 and 2015 gross monthly income, and found as fact that Defendant's "affidavit lists his average gross monthly income as $23,280.00," the order contained no ultimate finding of fact establishing Defendant's income "at the time the award [was] made."
Plaintiff cites Zurosky v. Shaffer , 236 N.C. App. 219, 763 S.E.2d 755 (2014) and Diehl v. Diehl , 177 N.C. App. 642, 630 S.E.2d 25 (2006), contending that the trial court may "use an average of [the supporting spouse's] prior years' income" when "the trial court does not have sufficient information to determine actual income." While the Court in both Zurosky and Diehl did use a supporting spouse's prior years' income to *734 determine whether he had the ability to pay alimony, both of those cases are distinguishable from the present case.
In Zurosky , the trial court noted that the supporting spouse reported in his financial affidavits a $16,000.00 monthly deficit between his income and expenses, but "expressed concerns about the credibility of the evidence presented by [the supporting spouse] concerning his income." Zurosky , 236 N.C. App. at 230, 763 S.E.2d at 762. Therefore, the trial court "relied on prior years' incomes rather than [the supporting spouse's] testimony concerning" his current actual income. Id. In determining the trial court did not err in relying on previous years' incomes, this Court noted several findings of fact in the trial court's order in which the court explained why it "did not find [the supporting spouse's] reported income to be credible[.]" Id. at 243, 763 S.E.2d at 769-770.
Similarly, in Diehl , the trial court used the supporting spouse's prior years' income because the trial court was not presented with "adequate information as to [the supporting spouse's] actual ... income" at the time of the order. Diehl , 177 N.C. App. at 650, 630 S.E.2d at 31. The trial court found the supporting spouse's representation of his actual income to be "highly unreliable," which forced the trial court to rely on previous years' income. Id. at 650, 630 S.E.2d at 30.
In the present case, unlike in Zurosky and Diehl , the trial court did not make any findings of fact regarding Defendant's current income at the time of the order, but only found as fact that Defendant had submitted an affidavit listing his income as $23,280.00 per month. Even if such findings had been made, the trial court did not base its decision on whether Defendant had the ability to pay alimony with Defendant's current income. Instead, the trial court based that decision on an average of Defendant's two prior years' income. But the trial court did not make findings of fact as to whether Defendant's professed actual income at the time of the order was reliable or unreliable before basing its decision regarding Defendant's ability to pay alimony on an average of prior years' income. Averaging the prior years' income to determine Defendant's ability to pay alimony resulted in a monthly gross income that was $10,115.00 higher than Defendant's reported monthly gross income.[4]
Consistent with this Court's precedents, we hold the trial court abused its discretion in basing its decision regarding Defendant's ability *735 to pay alimony on an average of Defendant's monthly gross income from prior years without first determining Defendant's *56 current monthly income, and whether that reported current income was credible. Accordingly, the alimony order must be reversed. On remand, the trial court must make findings of fact regarding Defendant's "actual income, from all sources, at the time of the order," Kowalick , 129 N.C. App. at 787, 501 S.E.2d at 675, and may only use prior years' incomes if the trial court finds as fact that Defendant's actual income is not credible, or is otherwise suspect. Zurosky , 236 N.C. App. at 230, 763 S.E.2d at 762 ; Diehl , 177 N.C. App. at 650, 630 S.E.2d at 31.
III. Conclusion
We reverse the trial court's order classifying the Cruise case compensation as deferred compensation and divisible property. The Cruise case compensation is separate property of Defendant under the circumstances present in this case. This case is remanded for further proceedings regarding equitable distribution. We decline to address Defendant's additional arguments regarding the valuation and distribution of the property related to the firm. Correctly viewing the Cruise case compensation as separate property, the trial court should determine anew whether there was an increase in the value of the firm, and whether any such increase was passive or active.
The alimony order is also reversed and remanded for further proceedings, as the trial court must determine Defendant's current actual income before deciding his ability to pay alimony on an average of his income from prior years.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
Judge INMAN concurs.
Judge TYSON concurs with separate opinion.

The firm was subsequently renamed Strauch, Green and Mistretta.

This amount was calculated by multiplying the net payment to Defendant of $992,844.00 by the percent of work done by the entire firm on the case prior to the separation (78%), being $774,418.00. Defendant's pre-separation ownership interest in the firm (26.32%) was then multiplied by the expected Cruise case fee used to determine the date of separation value of the firm using the capitalized returns method ($523,723.00). This number, $137,844.00, was subtracted from $774,418.00, thus calculating "the divisible property portion" of the Cruise case fee to be $636,575.00.

These assets include a new home in which he invested $40,000.00, a boat worth $60,000.00 with $10,000.00 equity, 27 guns, 100 knives, and a separate retirement plan worth over $107,000.00.

Defendant's average gross monthly income for 2014 and 2015, as found by the trial court, was $33,395.00, while his reported monthly gross income for those years was $23,280.00, for a difference of $10,115.00.