IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-448

Filed 02 May 2023

Guilford County, No. 07 CVD 3230

JEFFREY LOREN WELCH, Plaintiff,

v.

DEBORAH BEAM WELCH, Defendant.

Appeal by Defendant from an order entered 28 January 2022 by Judge Michelle Fletcher in Guilford County District Court. Heard in the Court of Appeals 29 November 2022.

*No brief for Plaintiff-Appellee.*

*Woodruff Family Law Group, by Carolyn J. Woodruff, Jessica Snowberger Bullock and Y. Michael Yin, for Defendant-Appellant.*

WOOD, Judge.

This is a second appeal in the same matter.[1] Where before this Court reviewed a trial court's denial of a contempt and Rule 70 motion, we now consider whether a motion for entry of a domestic relations order is a proper mechanism for distribution of an individual retirement account under the circumstances or constitutes an action subject to the statute of limitations.

---

[1] For the previous case, see *Welch v. Welch (Welch I)*, 278 N.C. App. 375, 859 S.E.2d 646 (2021) (unpublished).

## I.    Background

Mr. and Ms. Welch were married on 19 June 1981.  On 30 January 2007, an action for divorce, child custody, and equitable distribution was commenced, and the parties were divorced on 2 July 2007.  The parties entered into a Consent Judgment and Order on 30 October 2008, which specified the distribution of the marital property.  This distribution included Mr. Welch's Individual Retirement Account ("IRA") and provided as follows:

> As soon as practicable following the entry of this Consent Judgement and Order, Plaintiff shall transfer to Defendant one-half (50%) of his Charles Schwab Contributory IRA, Account Number . . . , into an individual retirement account in Defendant's sole name.  Upon the division, the tax basis of such individual retirement account, if any, shall also be equally divided between the Parties on a pro rata basis as of the date of transfer from such IRA.  This transfer is an incident of the parties' divorce and shall be completed pursuant to I.R.C. § 408(d)(6) via a trustee to trustee transfer.  Defendant and Plaintiff shall execute all documents necessary to effectuate such transfer.  Plaintiff shall be allowed to withdraw up to his one-half portion of his IRA at any time (but any such withdrawals shall not affect Defendant's one-half amount to be transferred to her).

The parties did not act upon the trial court's order to distribute the IRA until Ms. Welch filed a motion to find Mr. Welch in contempt on 28 October 2019, nearly eleven years after the Consent Judgment and Order.  The reason for this delayed action may have been that Ms. Welch believed that she had access to the account for those eleven years by virtue of her vested interest in the account.  The trial court

denied the contempt motion on 24 February 2020. It held that the statute of limitations, as enumerated in Section 1-47(1) of our General Statutes, barred her motion.

Ms. Welch subsequently filed a motion on 30 January 2020, requesting the trial court to "exercise its ministerial and administrative duty" to transfer title of the IRA to her pursuant to Rule 70 of the North Carolina Rules of Civil Procedure. The trial court denied this motion, too, on 13 April 2020. It held that such action "is beyond the Court performing a mere ministerial act where no facts are in dispute."

Ms. Welch appealed these denials in *Welch v. Welch (Welch I)*, 278 N.C. App. 375, 859 S.E.2d 646 (2021) (unpublished). In *Welch I*, this Court concluded that the contempt and Rule 70 motions were properly denied. This Court did not address whether the trial court could enter a domestic relations order to effectuate the transfer of the IRA because Ms. Welch had not presented that argument to the trial court. Citing *State v. Benson*, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988), this Court repeated the maxim "where a theory argued on appeal is not raised before the trial court, the argument is deemed waived on appeal." *Welch I*, 278 N.C. App. 375, 859 S.E.2d 646, ¶ 7.

Thereafter, Ms. Welch raised such a theory before the trial court and moved the trial court on 8 September 2021 to enter a domestic relations order to effectuate the transfer of the IRA. The "Motion" asked the court to "enter an IRA Domestic Relations Order (DRO) [p]ursuant to IRC § 408(d)(6) transferring the current balance

of Plaintiff's Schwab IRA account." It also contained six alternative motions. They

are as follows:

> Motion One: The court has the inherent authority based upon the equitable distribution Judgment to enter orders to effectuate the Judgment so that the court file can be closed.
>
> Motion Two: The Defendant moves for the return of her separate property vested in her pursuant to NCGS 50-20 et seq and requests that the court award her attorney fees from the Plaintiff for the failure to release her vested separate property to her. The IRA at Schwab is her vested separate property now and forever more.
>
> Motion Three: The Defendant moves for an IRA Order effectuating her vested property rights in the Schwab IRA.
>
> Motion Four: Pursuant to GS 50-20.1(j), the Defendant moves for an order effectuating her vested benefit in the Schwab IRA.
>
> Motion Five: Pursuant to NCGS 50-20 (g), the court can enter an order under transferring the title to the Defendant's vested IRA at Schwab to her.
>
> Motion Six: The Defendant generally moves for the magical words necessary for her to obtain her vested interest in the Schwab IRA as a part of all further relief the court deems necessary under equity or law.

The trial court denied the motion on 28 January 2022, holding as conclusions

of law:

> a. The Schwab IRA account has not been proven to be a *"qualified retirement plan"* pursuant to ERISA and, thus, a QDRO or DRO is inapplicable and not the appropriate mechanism for distribution thereof;

b.  The 2008 Consent Order specifically addressed the rights and obligations of the parties regarding the Schwab IRA, and the Order did not include language for entry of a QDRO or DRO as the mechanism for division and distribution of the Schwab IRA account;

c.  Furthermore, to the extent Defendant's motion continues to seek enforcement of the 2008 Consent Order, the motions are barred by the statute of limitations set forth in N.C.G.S. § 1-47.

Pursuant to N.C. Gen. Stat. § 7a-27(b)(2) (2022), Ms. Welch now appeals from the trial court's dismissal.

## II.  Standard of Review

"[W]hen the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts."  *Shear v. Stevens Bldg. Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992).  Findings of fact are conclusive on appeal if there is evidence to support those findings, while conclusions of law are reviewed *de novo*.  *Lee v. Lee*, 167 N.C. App. 250, 253, 605 S.E.2d 222, 224 (2004).  "Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court."  *Reese v. Mecklenburg Cnty.*, 200 N.C. App. 491, 497, 685 S.E.2d 34, 38 (2009).

## III.  Discussion

Ms. Welch argues that the trial court erred in denying her motion for entry of a domestic relations order ("DRO") when it concluded, as a matter of law, that a DRO

- 5 -

is "not the appropriate mechanism for distribution" of the IRA because it must be "proven to be a '*qualified retirement plan*' pursuant to ERISA" and, further, the original order "did not include language for entry of a QDRO or DRO" as a means of distribution. It also held that the motion for entry of a DRO is otherwise a new action "barred by the statute of limitations." We agree with Ms. Welch and overrule these conclusions.

**A. Domestic Relations Orders as a Mechanism for Effectuating an Equitable Distribution Order.**

An equitable distribution consent order, "once signed and entered by the trial judge, [becomes] a 'court-ordered equitable distribution' " for the purposes of distributing retirement plan benefits under Section 50-20.1 of our General Statutes. *Patterson v. Patterson*, 137 N.C. App. 653, 664, 529 S.E.2d 484, 490 (2000). Thus, the 2008 Consent Order, after being signed and entered by the trial court, is now treated as an equitable distribution award under Section 50-20.1. Ms. Welch's "interest in the Schwab IRA vested in October 2008 when the Order was entered." *Welch I*, 278 N.C. App. 375, 859 S.E.2d 646, ¶ 5. To "vest" means "to grant, endow, or clothe with a particular authority, right, or property." *Vested*, Webster's Third New International Dictionary (1968).

As part of an equitable distribution award, retirement accounts may be distributed "by means of a qualified domestic relations order, or as defined in section 414(p) of the Internal Revenue Code of 1986, or *by domestic relations order* or other

appropriate order." N.C. Gen. Stat. § 50-20.1(g) (2022) (emphasis added). This method of distribution "appl[ies] to all vested and nonvested pension, retirement, and deferred compensation plans, programs, systems, or funds, including . . . *individual retirement accounts* within the definitions of Internal Revenue Code sections 408 and 408A." § 50-20.1(h) (emphasis added). Section 408 of the Internal Revenue Code defines an "individual retirement account" as "a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries" and mandates certain investment limitations. 26 U.S.C. § 408(a). It is apparent from the record that the IRA at issue here falls into this descriptive category and may therefore be distributed through a DRO as outlined in Section 50-20.1(g) or by "other appropriate order." N.C. Gen. Stat. § 50-20.1(g) (2022); *see* 26 U.S.C. § 408(b)(6) (citing 26 U.S.C § 121(d)(3)(C)(i)) (providing generally for the tax-free transfer of an IRA via "written instrument incident to" a divorce decree).

We note that certain employer-sponsored retirement accounts are additionally subject to the federal Employee Retirement Income Security Act of 1974 ("ERISA") and require a special class of DRO, a *qualified* domestic relations order ("QDRO"), to distribute benefits to someone other than the account participant. 29 U.S.C. § 1056(d)(3)(A); *see* N.C. Gen. Stat. § 50-20.1(g) (2022) (providing for the use of QDROs). However, traditional IRAs, that is, IRAs not funded by an employer, are not "defined contribution plans" or "defined benefit plans" that would otherwise subject them to ERISA's requirements. 26 U.S.C. § 414(i)-(j). The record before us indicates that the

IRA at issue is a traditional IRA and is therefore not governed by ERISA.

The trial court here conflated DROs and QDROs. It stated, "The Schwab IRA account has not been proven to be a '*qualified retirement plan*' pursuant to ERISA and, thus, a QDRO or DRO is inapplicable and not the appropriate mechanism for distribution thereof." As explained above, the trial court need not concern itself with utilizing a more involved QDRO in this case; a simpler DRO suffices as an appropriate mechanism to distribute the IRA at issue. The IRA does not need to be a qualified retirement plan under ERISA for the trial court to issue a DRO.

## B. Domestic Relations Orders and the Statute of Limitations

We next address whether a motion for a DRO made more than ten years after the last action in a case is barred by the statute of limitations in initiating an action upon a judgment when the original order did not specify a DRO as a means to distribute the equitable distribution award.

The statute of limitations for initiating an action "[u]pon a judgment or decree of any court of the United States, or of any state or territory thereof, from the date of its entry" is ten years. N.C. Gen. Stat. § 1-47 (2022). An action, in this sense, may be "defined as 'a formal complaint within the jurisdiction of a court of law.'" *Bradford v. Bradford*, 279 N.C. App. 109, 114, 864 S.E.2d 783, 788 (2021) (quoting *Massey v. Massey*, 121 N.C. App. 263, 267, 465 S.E.2d 313, 315 (1996)).

In *Welch I*, this Court held that a motion for contempt and a Rule 70 motion were "action[s] to enforce the judgment" and barred by the statute of limitations after

ten years had passed since entry of the 2008 Consent Order. *Welch I*, 278 N.C. App. 375, 859 S.E.2d 646, ¶ 2. This Court did not elaborate upon the rational for this holding, but it is clear that this Court viewed the motion as a means of enforcing a prior judgment. Though not an independent action, these motions might be said to be "in the *nature of an action*" such that the statute of limitations would bar its entry. *McDonald v. Dickson*, 85 N.C. 248, 250 (1881) (quoting Thomas Campbell Foster, A Treatise on the Writ of Scire Facias 13 (Philadelphia, T. & J.W. Johnson 1851)).

In certain instances, a purported DRO motion seeking to modify a prior order may likewise constitute "an action upon a judgment" so as to invoke the statute of limitations, as was the case in *Bracey v. Murdock*. There, this Court reviewed a motion for a DRO that did "not simply 'seek[] to finalize' the [prior] Consent Order or to effectuate its equitable distribution provisions" but sought to additionally award "all passive gains and losses" from the disputed retirement account and to compel discovery. ___ NC. App. ___, ___, 880 S.E.2d 707, 709 (2022). " 'Because motions are properly treated according to their substance rather than their labels, we treat [Defendant]'s motion for what it really was, namely, a Rule 59 motion' to amend the 2005 Consent Order." *Id.* (quoting *Scott v. Scott*, 106 N.C. App. 379, 382, 416 S.E.2d 583, 585 (1992)).

Here, by contrast, Ms. Welch's motion for a DRO is not a crafty means to amend the distribution awarded in the 2008 Consent Order. Instead, Ms. Welch sought in her motion "to effectuate the Judgment" and did not request alterations to the

original order. Until now, our courts have yet to address whether a motion for a DRO, as here, constitutes a time-barred "action upon a judgment" where the trial court previously granted a party vested property rights in a retirement account and the party seeking the DRO is not seeking anything other than that awarded by the original order. Looking beyond our borders, we note that other state courts have answered the question before us.

In Vermont, a husband and wife divorced, and the husband moved in 2017 for entry of a DRO to effectuate the transfer of retirement funds two years after the eight-year statute of limitations ran from the original equitable distribution order. *Johnston v. Johnston*, 212 A.3d 627, 635 (Vt. 2019). The trial court initially approved a proposed DRO in 2007 after the parties' 2004 divorce. The husband filed a motion to enforce in 2017, claiming that the funds were never transferred to him. *Id.* at 628. "The court denied husband's motion to enforce, finding it barred by the eight-year statute of limitations for actions on judgments." *Id.* The relevant Vermont statute of limitations states, "Actions on judgments and actions for the renewal or revival of judgments shall be brought by filing a new and independent action on the judgment within eight years after the rendition of the judgment, and not after." Vt. Stat. Ann. tit. 12, § 506 (2022). Husband appealed the matter to the Vermont Supreme Court. The Vermont Supreme Court concluded, "We consider husband's motion as one that seeks to effectuate the final judgment through entry of an adjunct order and our decision turns on the unique nature of these procedural devices. We conclude that

husband's request is not an 'action on a judgment.'" *Johnston*, 212 A.3d at 632. That court wrestled with the notion that a DRO was an attempt to "enforce" a prior judgment and therefore constituted an "action" as used in Vermont's similar statute of limitations.

> We simply disagree with the conclusion that entry of a DRO is an attempt to enforce the underlying final divorce order or that the filing of a DRO is an attempt to enforce the underlying final divorce order or that the filing of a DRO constitutes an execution upon the judgment. As previously discussed, the right to obtain the retirement funds awarded in a final divorce order depends upon the approval of a third-party, the plan administrator. There is no 'judgment' to execute or enforce until that step has been taken.

*Id.* at 636. Although the Vermont Supreme Court acknowledged that other state courts may have held differently, it understood the husband's plight and the mechanism necessary to allow him to obtain his vested property. "[A]lthough husband was awarded the right to a particular amount of retirement funds in the 2004 divorce order, he had no effective ability to enforce that portion of the order through an 'action on the judgment.'" *Id.* at 634. It therefore held that "the approval of [a] proposed QDRO is adjunct to the entry of the judgment of divorce and not an attempt to 'enforce' the judgment." *Id.* at 635 (quoting *Joughin v. Joughin*, 906 N.W.2d 829, 832 (Mich. Ct. App. 2017)). It also cited a Tennessee case, *Jordan v. Jordan*, 147 S.W.3d 255 (Tenn. Ct. App. 2004), holding much the same. *Id.* at 632.

The Michigan Supreme Court faced a similar question and held that a motion

for a DRO after entry of a distribution award is not barred by that state's statute of limitations on actions upon judgments. *Dorko v. Dorko*, 934 N.W.2d 644, 650 (Mich. 2019). "A party's request for entry of a proposed QDRO does not involve a distinct legal 'claim.' Only claims can be barred by a statute of limitations." *Id.* at 648. The Michigan Supreme Court reasoned that "[a]sking a court to enter a proposed QDRO is therefore not an 'action' that can be time-barred by a statute of limitations because the order does not depend on any underlying *cause* of action. Rather, such a request merely implements a provision of the divorce judgment." *Id.* Though the statute of limitations "*would* apply" to attempts to recover retirement benefits attained in violation of the divorce judgment, that court "differentiate[ed] between defendant's *procedural* entitlement to entry of a proposed QDRO and her *substantive* right to receive 50% of plaintiff's retirement benefits." *Id.* at 649-50. Although *Dorko* addressed a QDRO, the same analysis is applicable to a DRO as in this case.

We find the rational of these cases persuasive, as to hold otherwise would deprive spouses of their vested property under an equitable distribution order if the property were not distributed in a timely manner as happened here. The same rationale applied in the above Vermont and Michigan cases is applicable here. Accordingly, we hold that Section 1-47 does not apply to a party's motion for entry of a proposed DRO when the court previously has ordered the distribution of retirement benefits and the motion does not seek an award different from the original equitable distribution order. We echo *Dorko* in holding that "[t]here is an important distinction

- 12 -

between a post[-]judgment *order* that implements a term of a divorce judgment and an *action* to enforce that judgment." *Id.* at 649. We note that, in the above decisions, the original equitable distribution orders specified the entry of DROs as the principal means of effectuating the distribution of the retirement accounts at issue. Though the 2008 Consent Order here specified a "trustee to trustee transfer" as the means of effectuating the distribution, we hold that the principles outlined above operate to allow the trial court to enter a post-judgment DRO to effectuate the intended result of the 2008 Consent Order.

## IV.    Conclusion

In accordance with Section 50-20.1 of our General Statutes, the trial court is authorized to enter a DRO as a proper mechanism for distributing a traditional IRA. The statute of limitations does not bar a request for entry of a DRO as a means of effectuating a prior order, so long as such entry does not affect the substantive rights of the parties.

REVERSED AND REMANDED.

Judges ZACHARY and GORE concur.