ARROWOOD, Judge.
 

 *736
 
 Robert John Wise ("defendant") appeals from child support and alimony order in favor of his ex-wife, LeAnne Michelle Wise ("plaintiff"). For the following reasons, we reverse and remand to the trial court.
 

 *737
 
 I.
 
 Background
 

 Plaintiff and defendant were married on 19 September 2009 and had two children during their marriage in November 2010 and September 2015. The parties separated on 6 June 2017. On 12 July 2017, plaintiff filed a complaint seeking child custody, child support,
 
 *791
 
 equitable distribution, divorce from bed and board, and post-separation support and alimony. Both plaintiff and defendant filed financial affidavits subsequent to the filing of the complaint. On 7 September 2017, defendant filed an answer, defenses, and counterclaims seeking child custody and equitable distribution.
 

 For the benefit of their children, the parties entered into a parenting agreement, which was signed by defendant on 7 September 2017 and by plaintiff on 18 September 2017. The parties then entered into a consent order that was filed 18 October 2017. The consent order resolved child custody in accordance with the terms of the parenting agreement and required defendant to pay temporary child support in the amount of $1,376.07 per month and post-separation support in the amount of $300.00 per month. The consent order also appointed a mediator to address issues of alimony, permanent child support, and equitable distribution. During a mediation on 1 November 2017, the parties came to an agreement on equitable distribution and a mediated settlement agreement was filed on 2 November 2017. The parties were unable to reach an agreement on alimony and permanent child support.
 

 In December 2017 and early January 2018, the parties filed amended financial affidavits. On 10 January 2018, plaintiff's attorney filed an affidavit of attorney fees and court costs.
 

 The issues of alimony and child support were heard by Judge Meredith A. Shuford in Lincoln County District Court on 10 and 11 February 2018. The trial court took the matter under advisement, and later filed an order on 5 February 2018. The trial court ordered defendant to pay child support in the amount of $1,551.24 per month and ordered defendant to pay alimony until 1 September 2021 in the amount of $1,850.00 per month. Defendant filed notice of appeal from the order on 28 February 2018.
 

 II.
 
 Discussion
 

 On appeal, defendant challenges the trial court's award of alimony, child support, and attorney's fees. We address the issues in the order they are raised.
 

 *738
 
 1.
 
 Alimony and Child Support
 

 "The amount of alimony is determined by the trial judge in the exercise of his sound discretion and is not reviewable on appeal in the absence of an abuse of discretion."
 
 Quick v. Quick
 
 ,
 
 305 N.C. 446
 
 , 453,
 
 290 S.E.2d 653
 
 , 658 (1982) (citing
 
 Sayland v. Sayland
 
 ,
 
 267 N.C. 378
 
 ,
 
 148 S.E.2d 218
 
 (1966) ).
 

 In determining the amount of alimony the trial judge must follow the requirements of the applicable statutes. Consideration must be given to the needs of the dependent spouse, but the estates and earnings of both spouses must be considered. "It is a question of fairness and justice to all parties."
 

 Id.
 

 (quoting
 
 Beall v. Beall
 
 ,
 
 290 N.C. 669
 
 , 674,
 
 228 S.E.2d 407
 
 , 410 (1976) ).
 

 A trial court's award of alimony is addressed in
 
 N.C. Gen. Stat. § 50-16
 
 .3A ..., which provides in pertinent part that in "determining the amount, duration, and manner of payment of alimony, the court shall consider all relevant factors" including,
 
 inter alia
 
 , the following: marital misconduct of either spouse; the relative earnings and earning capacities of the spouses; the ages of the spouses; the amount and sources of earned and unearned income of both spouses; the duration of the marriage; the extent to which the earning power, expenses, or financial obligations of a spouse are affected by the spouse's serving as custodian of a minor child; the standard of living of the spouses during the marriage; the assets, liabilities, and debt service requirements of the spouses, including legal obligations of support; and the relative needs of the spouses.
 

 Hartsell v. Hartsell
 
 ,
 
 189 N.C. App. 65
 
 , 69,
 
 657 S.E.2d 724
 
 , 727 (2008) (quoting
 
 N.C. Gen. Stat. § 50-16
 
 .3A (2017) ).
 

 Child support is governed by
 
 N.C. Gen. Stat. § 50-13.4
 
 . This Court has explained that "[t]he ultimate objective in setting awards for child support is to secure support commensurate with the needs of the children and the ability of the [obligor] to meet the needs."
 
 Smith v. Smith
 
 ,
 
 247 N.C. App. 135
 
 , 150,
 
 786 S.E.2d 12
 
 , 25 (2016) (quotation marks and citations omitted). Like the
 
 *792
 
 determination of the amount of alimony, "[c]hild support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion."
 
 Leary v. Leary
 
 ,
 
 152 N.C. App. 438
 
 , 441,
 
 567 S.E.2d 834
 
 , 837 (2002).
 
 *739
 
 "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason ... [or] upon a showing that [the trial court's decision] was so arbitrary that it could not have been the result of a reasoned decision."
 
 White v. White
 
 ,
 
 312 N.C. 770
 
 , 777,
 
 324 S.E.2d 829
 
 , 833 (1985).
 

 Moreover, for both alimony and child support, the trial court is required to make findings of fact and conclusions of law.
 
 See
 

 N.C. Gen. Stat. § 50-16
 
 .3A ;
 
 N.C. Gen. Stat. § 50-13.4
 
 (2017). To support the trial court's award of alimony and child support, the trial court's findings must be sufficiently specific to allow the reviewing court to determine if they are supported by competent evidence and support the trial court's award.
 
 See
 

 Rhew v. Rhew
 
 ,
 
 138 N.C. App. 467
 
 , 470,
 
 531 S.E.2d 471
 
 , 473 (2000) ("The trial court must at least make findings sufficiently specific to indicate that the trial judge properly considered each of the factors ... for a determination of an alimony award. In the absence of such findings, appellate courts cannot appropriately determine whether the order of the trial court is adequately supported by competent evidence, and therefore such an order must be vacated and the case remanded for necessary findings.") (quotation marks and citations omitted);
 
 Plott v. Plott
 
 ,
 
 313 N.C. 63
 
 , 68-69,
 
 326 S.E.2d 863
 
 , 867 (1985) (Explaining that for an award of child support pursuant to
 
 N.C. Gen. Stat. § 50-13.4
 
 , specific findings are necessary to allow an appellate court to determine if the trial court's order is sufficiently supported by competent evidence.)
 

 Gross and Net Income Calculations
 

 Defendant makes various arguments that the trial court erred in awarding child support and alimony because it erred in calculating his gross and net incomes.
 

 In the order, the trial court made the following findings showing its considerations in calculating defendant's gross and net incomes:
 

 25. The defendant's total gross income for calculation of child support should include his salary from CMPD ($7,171.97), his average off duty wages ($1[,]870.00) and his average income from his business, Wiseguys ($212.00) for a total of $9[,]253.97.
 

 ....
 

 33. For calculation of alimony, the court finds the defendant's gross income from his employment with CMPD, off duty work and Wiseguys is $9,253.97. The court
 
 *740
 
 considered the defendant's withholdings for his taxes in the amount of $1[,]452.00 and his monthly child support obligation of $1,551.24, where he received credit for the medical insurance withheld for the children. The 401(k) loan is related to his business. The defendant has approximate net income of $5,690.00 and approximate monthly living expenses of $3,600.00. He has the ability to provide support for the plaintiff.
 

 Based on these findings, the trial court concluded in conclusions of law numbers 2 and 7 that defendant "has the present financial ability and duty to contribute to the support and maintenance of the children" and "has the ability to provide spousal support to ... [p]laintiff." The trial court ordered defendant to make child support payments in the amount of $1,551.24 per month, to continue to provide hospital and health insurance for the children and pay 100% of uninsured health costs, and to pay alimony in the amount of $1,850.00 per month, beginning 15 February 2018 and continuing until 1 September 2021.
 

 The first issue raised by defendant concerns the trial court's calculation of net income for purposes of determining alimony. Defendant contends the trial court erred in calculating net income by disregarding mandatory deductions from his CMPD paycheck totaling over $900.00 per month. Those alleged mandatory monthly deductions not included in the trial court's calculation are
 
 *793
 
 $429.97 for law enforcement officer retirement ("LEO retirement") and $509.35 for defendant's portion of the health insurance premium.
 

 Defendant asserts, and the record shows, that he brought these deductions to the trial judge's attention when the court sought comment on a proposed order. In response to defendant's request that the trial court correct finding of fact number 33 to account for the deductions for LEO retirement and his portion of the health insurance premium, the trial court replied that, "[a]s to #33, the court 'considered' the deductions totaling $1[,]452[.00] (all of the taxes). I addressed the health insurance. I did not consider the LEO deduction or any other voluntary deductions."
 

 It is evident from a review of finding of fact number 33 that the trial court did not account for the LEO retirement or defendant's portion of the health insurance premium in the calculations of defendant's net income. Defendant now asserts that the trial court's disregard for these mandatory deductions was an abuse of discretion that resulted in the overstatement of his net income, which in turn influences the determination of his ability to pay alimony.
 

 *741
 
 Plaintiff responds to defendant's assertion by arguing the trial court did not disregard the alleged mandatory deductions. Plaintiff contends the trial court considered the deductions, chose not to factor them into the net income calculation, and it was within the trial court's discretion to do so because "the trial judge is not bound by the financial assertions of the parties and may resort to common sense and every-day experiences."
 
 Bookholt v. Bookholt
 
 ,
 
 136 N.C. App. 247
 
 , 251,
 
 523 S.E.2d 729
 
 , 732 (1999). Furthermore, plaintiff notes that the trial court "is not required to make findings about the weight and credibility it assigns to the evidence before it."
 
 Hartsell
 
 ,
 
 189 N.C. App. at 75
 
 ,
 
 657 S.E.2d at 730
 
 .
 

 Plaintiff is correct that "[t]he determination of what constitutes the reasonable needs and expenses of a party in an alimony action is within the discretion of the trial judge, and he is not required to accept at face value the assertion of living expenses offered by the litigants themselves."
 
 Whedon v. Whedon
 
 ,
 
 58 N.C. App. 524
 
 , 529,
 
 294 S.E.2d 29
 
 , 32,
 
 disc. review denied
 
 ,
 
 306 N.C. 752
 
 ,
 
 295 S.E.2d 764
 
 (1982). However, in regards to the LEO retirement, the issue is not whether it was a reasonable need or expense, but whether it was a mandatory deduction from defendant's CMPD income. The undisputed evidence in the record is that the LEO retirement was a mandatory deduction. Specifically, in response to plaintiff's counsel's examination of defendant concerning deductions listed in defendant's financial affidavit, defendant testified, "[t]he LEO is a mandatory retirement that's taken out of my check that's not voluntary." Upon further questioning, defendant again reiterated that the LEO retirement was mandatory and plaintiff's counsel, seeming to accept defendant's testimony, responded, "[m]andatory, okay, don't give me that one." Although it is the trial court's role to weigh the evidence, the undisputed evidence in this case is that the LEO retirement was a mandatory deduction from defendant's CMPD income.
 

 It is not clear from the trial court's response to defendant, "I did not consider the LEO deduction or any other voluntary deductions[,]" whether the trial court was aware the LEO retirement was a mandatory deduction and did not factor it into the net income calculations, or whether the trial court mistakenly believed it was voluntary and determined it was improper to factor into the calculations. Regardless, we hold either was an abuse of discretion where the record evidence was that the LEO was a mandatory deduction from defendant's CMPD income, making that portion of defendant's CMPD income unavailable to defendant to pay towards alimony. The trial court should have accounted for this mandatory deduction it its calculation of defendant's net income.
 

 *742
 
 The evidence regarding defendant's portion of the medical insurance premium is not as straight forward as the evidence of the LEO retirement. In defendant's financial affidavit, defendant claimed a deduction from his income of $710.85 for medical insurance. Defendant testified that this deduction for
 
 *794
 
 medical insurance included the cost of health insurance for himself, plaintiff, their children, and his older daughter from a previous marriage. The evidence was that the insurance premium to cover children was the same whether there was one child or 50 children. Defendant specifically identified, both in his testimony and in his financial affidavit, that the portion of the claimed deduction to cover the cost of health insurance for the children was $201.50. The trial court accepted the evidence of the cost of health insurance attributed to the children and found in finding of fact number 27 that "defendant pays health insurance for the children in the amount of $201.50 per month." The trial court additionally found in finding of fact number 33 regarding net income that it "considered ... [defendant's] monthly child support obligation of $1,551.24, where he received credit for the medical insurance withheld for the children."
 

 The evidence was that the remaining $509.35 claimed by defendant as a deduction for medical insurance covered the health insurance premium for plaintiff and defendant. Defendant testified that he had the monthly total for the health insurance deduction, but did not "have the breakdown for spouse or employee, children." The reason the portion of the health insurance premium attributed to the children was designated was because defendant calculated it for child support purposes. Despite the evidence that plaintiff was covered by defendant's health insurance, defendant acknowledged that plaintiff would not be covered by defendant's health insurance after the divorce. The trial court specifically found in finding of fact number 17 that "[o]nce the divorce is final, [plaintiff] will have no health insurance."
 

 As noted above, in response to defendant's request that the trial court correct finding of fact number 33 to account for his portion of the health insurance premium, the trial court responded, "I addressed the health insurance." However, there are no findings of fact regarding the remaining $509.35 that defendant claimed as a deduction for medical insurance, and there is no indication that the trial court accounted for the cost of defendant's health insurance premium either as a deduction from his income or as a personal expense.
 

 The trial court did, however, find in finding of fact number 17 that "[plaintiff] plans to obtain coverage through Blue Cross in the approximate amount of $630[.00] per month." The trial court additionally found
 
 *743
 
 in finding of fact number 20 that "[w]hile [plaintiff] is residing with her parents and included under defendant's insurance, her actual living expenses are approximately $1[,]100.00. She anticipates incurring living expenses of $5,350.00 per month to live independently and provide herself with health insurance."
 

 In
 
 Bryant v. Bryant
 
 ,
 
 139 N.C. App. 615
 
 ,
 
 534 S.E.2d 230
 
 (2000), this Court addressed the trial court's characterization of investment income as a reasonable expense. This Court acknowledged that " '[t]he determination of what constitutes the reasonable needs and expenses of a party in an alimony action is within the discretion of the trial judge, and he is not required to accept at face value the assertion of living expenses offered by the litigants themselves[.]' "
 
 139 N.C. App. at 618-19
 
 ,
 
 534 S.E.2d at 232
 
 (quoting
 
 Whedon
 
 ,
 
 58 N.C. App. at 529
 
 ,
 
 294 S.E.2d at
 
 32 ). Nevertheless, this Court found "the trial court's inclusion of this investment income amount as an expense for the plaintiff but not for the defendant constituted an abuse of discretion."
 
 Id.
 
 at 619,
 
 534 S.E.2d at 233
 
 . This court explained that "[i]t [was] not logical that the trial court could properly characterize [the] investment income, earned and reinvested during the course of the marriage, as an expense for one spouse but not for the other."
 
 Id
 
 .
 

 The same reasoning applies to the consideration of expenses for health insurance. Ordinarily, if the trial court considers the cost of health insurance for one party as a reasonable living expense, it would be an abuse of the trial court's discretion not to consider the other party's cost for health insurance similarly. Here, the trial court should have considered defendant's portion of the health insurance premium as a reasonable living expense, just as the court did with plaintiff's health insurance expense. We do not, however, hold that the entire $509.35 difference between the $710.85 deduction for medical
 
 *795
 
 insurance claimed by defendant and the $201.50 portion of that deduction attributed to the children's health insurance premium should be considered by the trial court. Although defendant testified that he did not calculate his own portion of the health insurance premium, the documentary exhibits in the record include the 2018 medical insurance rates that were used to calculate the children's portion of the health insurance premium in a plan covering only defendant and his children. Those 2018 rates show that defendant's portion of the health insurance premium would be approximately $59.06 per month. The trial court abused its discretion in not accounting for defendant's portion of the health insurance premium in calculating his net income.
 
 *744
 
 Because the deduction for the LEO retirement was mandatory and those funds were not available to defendant to pay alimony, we hold the trial court's failure to account for the mandatory deduction was not supported by reason and amounted to an abuse of discretion. At the very least, the trial court must make further findings setting forth the reasons why the LEO retirement was not factored into its calculations. Without such findings, this Court is unable to think of any reason why the LEO retirement should not be included in the net income calculations. Additionally, the differential treatment of plaintiff's and defendant's health insurance costs amounted to an abuse of discretion. Upon remand, the trial court should make additional findings as to defendant's portion of the health insurance premium and account for those reasonable expenses in the calculation of defendant's net income.
 

 The second issue raised regarding the trial court's calculations of defendant's gross income and net income concerns the trial court's calculation of defendant's income from his business, Wiseguys. In finding of fact number 25, the trial court included $212.00 as defendant's average income from Wiseguys in the calculation of defendant's total gross income. That total gross income, including the Wiseguys income, was then referenced in the calculations of net income in finding of fact number 33. The trial court explained how it calculated defendant's income from Wiseguys in the following relevant findings:
 

 7. The defendant also owns a business, Wiseguys Used Emergency Equipment. He is a sole owner. The business has been in operation since 2001. The defendant's account [sic] testified regarding the tax returns he has prepared for the business and the parties individual returns.
 

 8. The defendant reports a monthly loss for the business of $2,479.85 on his financial affidavit. This is not credible. The court reviewed the business tax returns for 2015 and 2016. The returns include reported gains and losses for [years] since 2001. There have been large fluctuations from year to year based upon the nature of the business. The average gains and losses since 2001 equal a gain of $1,419.27 per year ($118.27 per month). The average for 2015 and 2016 is $2,538.00 per year ($211.50 per month).
 

 It is evident from these findings and finding of fact number 25 that the trial court considered the average monthly income from 2015 and 2016,
 
 *745
 
 rounded up to the dollar, in determining defendant's average income from Wiseguys.
 

 Defendant takes issue with the trial court's calculations of his income from Wiseguys based on income from previous years instead of evidence of present income. Defendant acknowledges that past income can be considered in certain circumstances, but contends the trial court failed to make the necessary findings explaining why the evidence of present income from Wiseguys was not reliable.
 

 This court has explained that " '[a]limony is ordinarily determined by a party's
 
 actual
 
 income, from all sources, at the time of the order.' "
 
 Works v. Works
 
 ,
 
 217 N.C. App. 345
 
 , 347,
 
 719 S.E.2d 218
 
 , 219 (2011) (quoting
 
 Kowalick v. Kowalick
 
 ,
 
 129 N.C. App. 781
 
 , 787,
 
 501 S.E.2d 671
 
 , 675 (1998) ). "Similarly, in general, 'a party's ability to pay child support is determined by that party's actual income at the time the award is made.' "
 

 *796
 

 Burger v. Burger
 
 , --- N.C. App. ----, ----,
 
 790 S.E.2d 683
 
 , 686 (2016) (quoting
 
 McKyer v. McKyer
 
 ,
 
 179 N.C. App. 132
 
 , 146,
 
 632 S.E.2d 828
 
 , 836 (2006) ). Yet, there are exceptions to these rules. The trial court may base an alimony or child support obligation on earning capacity rather than actual income if the trial court finds that the party has depressed income in bad faith.
 
 Id
 
 . at ----,
 
 790 S.E.2d at
 
 686 (citing
 
 Works
 
 ,
 
 217 N.C. App. at 347
 
 ,
 
 719 S.E.2d at
 
 219 ;
 
 McKyer
 
 ,
 
 179 N.C. App. at 146
 
 ,
 
 632 S.E.2d at 836
 
 . This Court has also allowed the trial court to average prior years' incomes in cases where the trial court found the evidence of actual income is unreliable or otherwise insufficient.
 
 See
 

 Diehl v. Diehl
 
 ,
 
 177 N.C. App. 642
 
 , 649-50,
 
 630 S.E.2d 25
 
 , 30 (2006) ;
 
 Zurosky v. Shaffer
 
 ,
 
 236 N.C. App. 219
 
 , 242-43,
 
 763 S.E.2d 755
 
 , 769-70 (2014).
 

 In
 
 Diehl
 
 , the plaintiff "challenge[d] the trial court's use of an average of his monthly gross incomes in 2001 and 2002 as a basis for finding his monthly gross income from 2003 ...."
 
 177 N.C. App. at 649
 
 ,
 
 630 S.E.2d at 30
 
 . This Court noted the trial court's findings that the evidence presented of actual income was unreliable were supported by the evidence and held that, "[g]iven the unreliability of [the plaintiff's] documentation, we cannot conclude ... that the trial court abused its discretion by averaging ... income from ... two prior tax returns to arrive at his 2003 income."
 
 Id
 
 . at 650,
 
 630 S.E.2d at 30
 
 . This Court also disagreed with the plaintiff's characterization of the trial court's methodology of averaging prior years' incomes as "imputation" of income and held the law of imputation of income was inapplicable.
 
 Id
 
 . Thus, the trial court did not need to find bad faith.
 
 Id
 
 .
 

 In
 
 Zurosky
 
 , this Court noted the difference between those cases where the trial court may impute income when a party acts in bad faith
 
 *746
 
 to depress their income and cases where the reported income was unreliable, explaining that "[i]n
 
 Diehl
 
 ..., the trial court did not make a finding of bad faith or have evidence that the spouse deliberately depressed his income; the trial court used prior years' incomes because the trial court did not have sufficient evidence regarding his actual income."
 
 236 N.C. App. at 243
 
 ,
 
 763 S.E.2d at 769
 
 . This Court held
 
 Zurosky
 
 was analogous to
 
 Diehl
 
 in that there were concerns over the reliability of the reported income; thus, this Court held the trial court did not abuse its discretion in using prior years' income to determine alimony and child support.
 
 Id.
 
 at 243-44,
 
 763 S.E.2d at 769-70
 
 .
 

 Defendant acknowledges
 
 Diehl
 
 and
 
 Zurosky
 
 , but contends the trial court did not make the necessary findings in this case. Defendant relies on
 
 Green v. Green
 
 , --- N.C. App. ----,
 
 806 S.E.2d 45
 
 (2017), in which this Court distinguished
 
 Diehl
 
 and
 
 Zurosky
 
 , explaining that "the trial court did not make findings of fact as to whether [the d]efendant's professed actual income at the time of the order was reliable or unreliable before basing its decision regarding [the d]efendant's ability to pay alimony on an average of prior years' income." --- N.C. App. at ----,
 
 806 S.E.2d at 55
 
 . This Court held "the trial court abused its discretion in basing its decision regarding [the d]efendant's ability to pay alimony on an average of [the d]efendant's monthly gross income from prior years without first determining [the d]efendant's current monthly income, and whether that reported current income was credible."
 

 Id.
 

 at ----,
 
 806 S.E.2d at 55-56
 
 .
 

 As stated above, in this case the trial court found in finding of fact number 8 that "[t]he defendant reports a monthly loss for the business of $2,479.85 on his financial affidavit." The trial court then additionally found in finding of fact number 8 that defendant's reported income "is not credible." These are the precise findings that this Court stated were necessary in
 
 Green
 
 . Nevertheless, defendant contends the trial court's bare statement that defendant's evidence is not credible is inadequate absent additional findings explaining the court's concerns over the reliability of defendant's evidence. Although we do not think such additional findings are required, we note that the trial court additionally found in finding of fact number 8 that it was concerned with defendant's evidence of actual income because "[t]here have been large fluctuations form year to year based upon the nature of the business." Thus, the trial court questioned whether the defendant's reported income accurately represented his income from Wiseguys. The evidence
 
 *797
 
 in the record supports the trial court's findings; therefore, we cannot say the trial court abused its discretion. Like in
 
 Diehl
 
 and
 
 Zurosky
 
 , we hold the trial court's findings in this case support its decision to use prior years' income from Wiseguys
 
 *747
 
 in the calculation of gross income for the determinations of alimony and child support.
 

 Furthermore, this Court has afforded the trial court discretion in selecting the number of prior years' income it considers. For example, the trial court considered the most recent two years in
 
 Diehl
 
 ,
 
 177 N.C. App. at 650-51
 
 ,
 
 630 S.E.2d at 30-31
 
 , and considered prior income over a longer span in
 
 Zurosky
 
 ,
 
 236 N.C. App. at 243
 
 ,
 
 763 S.E.2d at 770
 
 . In both instances, this Court held the trial court's decision to consider prior income was rational and the trial court did not abuse its discretion in doing so.
 

 The trial court's decision in this case to consider only the income from the most recent two years, for which the business tax returns of Wiseguys were introduced into evidence, may be a proper exercise of the trial court's discretion. This Court, however, cannot make that determination without additional findings setting forth the trial court's reasons for choosing two years as its measure of time as opposed to the longer period for which it also calculated average income. Given the difference in the average income for the different time spans in finding of fact number 8, upon remand, the trial court should make additional findings to support its decision to use the average income from Wiseguys from the most recent two years in its determination of business income.
 

 Defendant's third challenge to the trial court's calculation of net income is the trial court's alleged disregard for approximately $1,000.00 of personal expenses that defendant included as business expenses for Wiseguys. Defendant asserts that those personal expenses include,
 
 inter alia
 
 , uninsured medical expenses, a cell phone, and vehicle expenses. Defendant contends that those personal expenses were included in the reported business loss from Wiseguys, but when the trial court used the prior years' income instead of the reported business loss to determine his income from Wiseguys, the trial court failed to account for these personal expenses elsewhere in the net income calculations. Defendant argues the trial court should have considered the expenses separately in the calculation of business income as a deduction, or in the calculation of defendant's individual monthly expenses. We are not convinced the trial court erred.
 

 It is evident that the trial court considered these personal expenses. The trial court explicitly acknowledged the expenses in finding of fact number 9, when it found as follows:
 

 9. The defendant pays multiple personal expenses from the business such as uninsured health expenses such
 
 *748
 
 as co-pays and prescriptions, his cellular phone, automobile expenses, and meals. He receives a benefit of approximately $1,000[.00] per month for these personal expenses.
 

 Defendant's testimony was that he did not include these expenses in his financial affidavit because they were included as business expenses for Wiseguys and included in the reported business loss. Defendant contends that he purposefully did not include them in both the reported business loss and as personal expenses to avoid "double dipping."
 

 While taking no position on the correct classification of these expenses, we agree with defendant that it was proper not to include them as both business expenses and personal expenses. However, we disagree that the trial court erred by not accounting for these expenses as living expenses in finding of fact number 23, in which the trial court found "defendant has living expenses of approximately $3,600.00 per month[,]" after the trial court refused to accept defendant's reported business loss for Wiseguys.
 

 As stated above, the trial court calculated defendant's monthly income from Wiseguys based on prior years' income. The prior years' income was calculated from information included in the business tax returns for Wiseguys for 2015 and 2016. Those tax returns include as business deductions expenses similar to those defendant now claims the trial court failed to address separately. Because the personal expenses were included as business deductions and accounted for in
 
 *798
 
 the business tax returns used to determine defendant's income from Wiseguys, the trial court did not err in excluding them from the living expenses considered in finding of fact number 23. Including them as separate living expenses after they were considered in determining income from Wiseguys would result in "double dipping."
 

 Defendant's final argument regarding the trial court's calculation of gross income and net income is that the trial court erred in the amount of alimony it awarded. Defendant contends the trial court's alimony award renders him unable to pay child support and reasonable monthly expenses. While we do not agree with all of defendant's adjustments for the errors alleged on appeal, we hold the trial court must revisit its calculations of gross income and net income used to determine child support and alimony. In summary, trial court should make additional findings to support its determination of defendant's business income from Wiseguys, which is used to calculate gross income and determine defendant's child support obligation. The trial court should also make
 
 *749
 
 additional findings to account for defendant's mandatory LEO retirement deduction and defendant's reasonable health insurance expenses in the calculation of defendant's net income for purposes of determining alimony.
 

 Amount and Duration of Alimony
 

 Defendant also contends the trial court erred in its award of alimony because it did not make sufficient findings of fact to support the amount and duration of the award. Specifically, defendant argues "[t]he order on appeal lacks any findings setting forth the reasons alimony was awarded at a rate of $1,850.00 per month for a term of forty-four months." Defendant asserts that this deficiency illustrates the lack of detailed findings throughout the order.
 

 N.C. Gen. Stat. § 50-16
 
 .3A requires the trial court to make findings of fact supporting an award of alimony and specifically mandates that "[t]he court shall set forth ..., if making an award, the reasons for its amount, duration, and manner of payment."
 
 N.C. Gen. Stat. § 50-16
 
 .3A(c). "It is well-established by this Court that 'a trial court's failure to make
 
 any
 
 findings regarding the reasons for the amount, duration, and the manner of payment of alimony violates
 
 N.C. Gen. Stat. § 50-16.3
 
 (A)(c).' "
 
 Ellis v. Ellis
 
 ,
 
 238 N.C. App. 239
 
 , 242,
 
 767 S.E.2d 413
 
 , 415-16 (2014) (quoting
 
 Fitzgerald v. Fitzgerald
 
 ,
 
 161 N.C. App. 414
 
 , 421,
 
 588 S.E.2d 517
 
 , 522-23 (2003) ) (emphasis in original). This Court has explained that "the findings of fact required to support the amount, duration, and manner of payment of an alimony award are sufficient if findings of fact have been made on the ultimate facts at issue in the case and the findings of fact show the trial court properly applied the law in the case."
 
 Friend-Novorska v. Novorska
 
 ,
 
 143 N.C. App. 387
 
 , 395,
 
 545 S.E.2d 788
 
 , 794 (footnote omitted),
 
 affirmed per curiam
 
 ,
 
 354 N.C. 564
 
 ,
 
 556 S.E.2d 294
 
 (2001).
 

 It is telling that plaintiff does not point to findings clearly setting forth the reasons for the amount or duration of the trial court's alimony award. A review of the order reveals that the trial court did not make any such findings.
 

 Despite the plain language of
 
 N.C. Gen. Stat. § 50-16
 
 .3A(c), plaintiff contends that it is sufficient that the trial court's reasoning can be derived from its findings. In support of her argument, plaintiff cites this Court's unpublished opinion in
 
 Dorwani v. Dorwani
 
 ,
 
 214 N.C. App. 560
 
 ,
 
 714 S.E.2d 868
 
 (2011) (unpub.), which is not controlling legal authority.
 
 See
 
 N.C.R. App. P. 30(e)(3) (2019) ("An unpublished decision of the North Carolina Court of Appeals does not constitute controlling legal authority.") In
 
 Dorwani
 
 , this Court upheld the trial court's award of
 
 *750
 
 alimony for the life of the plaintiff because "the trial court's rationale for awarding alimony for an indefinite term [was] obvious" from consideration of the unchallenged findings.
 
 Id
 
 . at *3.
 

 Here, although plaintiff identifies the trial court's findings that plaintiff was a homemaker and the primary caretaker of their seven-year-old and sixteen-month-old children, the parties agreed plaintiff would stay home with the children until at least the time they were both in school in 2020, plaintiff is enrolled in school to obtain a degree in Business Administrative that she expects to complete
 
 *799
 
 in 2019, plaintiff has been out of the workforce for nine years, plaintiff anticipates living expenses of $5,350.00, and defendant has net income of approximately $5,690.00 and living expenses of approximately $3,600.00, these findings do not set forth the reasons for the precise amount or duration of the trial court's alimony award. Plaintiff asserts the trial court's rationale is apparent because the forty four month duration is within the timeframe that allows plaintiff to seek employment once the children are both enrolled in school and because the amount of $1,850.00 per month is within the range of defendant's excess income and plaintiff's income shortfall. Plaintiff's assertions, however feasible, are merely conjecture.
 

 This Court does not rely on speculation. The trial court must make sufficient findings to allow this Court to perform a meaningful review. Because the trial court did not set forth its reasons for the amount and duration of its alimony award, we must remand for further findings.
 
 See
 

 Hartsell
 
 ,
 
 189 N.C. App. at 75-76
 
 ,
 
 657 S.E.2d at
 
 730-31 (citing
 
 Williamson v. Williamson
 
 ,
 
 140 N.C. App. 362
 
 ,
 
 536 S.E.2d 337
 
 (2000),
 
 Fitzgerald
 
 ,
 
 161 N.C. App. 414
 
 ,
 
 588 S.E.2d 517
 
 (2003), and
 
 Squires v. Squires
 
 ,
 
 178 N.C. App. 251
 
 ,
 
 631 S.E.2d 156
 
 (2006) ).
 

 2.
 
 Attorney's Fees
 

 Lastly, defendant challenges the trial court's award of attorney's fees in favor of plaintiff on the basis that the trial court failed to make sufficient findings of fact to support the award. We agree additional findings are necessary.
 

 Plaintiff requested attorney's fees and costs in the complaint and, on 10 January 2018, plaintiff's attorney filed an affidavit of fees and court costs.
 

 After plaintiff and defendant presented arguments on attorney's fees, the trial court issued the following pertinent findings of fact:
 

 34. In the Equitable Distribution Order, the defendant was ordered to pay a distributive award to the plaintiff in excess of $4,000.00. The [p]laintiff has used the
 
 *751
 
 award and her share of the marital assets she previously withdrew from joint accounts to pay her living expenses and attorney's fees. It has been necessary for the plaintiff to depend on support from her parents and deplete her share of the marital estate to meet her monthly living expenses.
 

 35. The plaintiff has insufficient means to subsist during the prosecution of this action and to defray the necessary legal expenses thereof. She relied on her parents to pay her legal fees as well as a monetary award from the equitable distribution of the marital estate.
 

 ....
 

 37. The [p]laintiff has incurred attorney's fees to pursue her claim for alimony in an amount exceeding $3,500.00.
 

 The trial court then issued conclusion of law number 9, in which the court concluded "[a]n award of attorney's fees is appropriate because the [p]laintiff is dependent, is entitled to an award of alimony and she had insufficient means [to] subsist during the prosecution of her claim and to defray the necessary legal expenses thereof." Based on these findings and conclusion, the trial court ordered that "[d]efendant shall reimburse the [p]laintiff for attorney's fees in the amount of $3,500.00 by July 1, 2018."
 

 "As with [an] analysis for alimony, an analysis for attorney's fees requires a two-part determination: entitlement and amount."
 
 Barrett v. Barrett
 
 ,
 
 140 N.C. App. 369
 
 , 374,
 
 536 S.E.2d 642
 
 , 646 (2000). This Court explained that "[a] spouse is entitled to attorney's fees if that spouse is (1) the dependent spouse, (2) entitled to the underlying relief demanded (e.g., alimony and/or child support), and (3) without sufficient means to defray the costs of litigation."
 
 Id
 
 . "Once a spouse is entitled to attorney's fees, our focus then shifts to the amount of fees awarded. The amount awarded will not be overturned on appeal absent an abuse of discretion."
 
 Id
 
 . at 375, 536 S.E.2d at 647. However, as with any award of attorney's fees, the trial court is required to make findings of fact as to the reasonableness of the fees based on the nature and scope of the legal services and the skill and time required.
 
 See
 

 Williamson
 
 , 140 N.C. App. at 365, 536 S.E.2d at 339.
 

 *800
 
 Here, the trial court's findings of fact numbers 34, 35, and 37 establish that plaintiff was entitled to attorney's fees. The trial court, however, did not make any findings on which to base a reasonableness determination;
 

 *752
 
 nor did the court find that the fees incurred by plaintiff were reasonable. The trial court simply awarded plaintiff $3,500.00 in attorney's fees based on its finding that "[p]laintiff has incurred attorney's fees to pursue her claim for alimony in an amount exceeding $3,500.00." Additional findings of fact are necessary to support the trial court's attorney's fee award in this case.
 
 See
 

 Id
 
 . ("[T]he trial court failed to make findings of fact as to the nature and scope of legal services rendered, the skill and the time required upon which a determination of reasonableness of the fees can be based. This failure effectively precludes this Court from determining whether the trial court abused its discretion in setting the amount of the award.") (quotation marks and citations omitted).
 

 Plaintiff asserts additional findings are not required in this case because the amount of attorney's fees awarded was within the range requested and supported by the affidavit submitted by her attorney. In support of her argument, plaintiff cites
 
 Barrett
 
 , in which this Court upheld an award of $3,100.00 in attorney's fees based on affidavits showing plaintiff incurred $5,446.55 in attorney's fees. 140 N.C. App. at 375, 536 S.E.2d at 647. In
 
 Barrett
 
 , however, in addition to recognizing the attorney's fee award was within the range sought, this Court explained that "[t]he trial court also found that the hourly rates charged were reasonable and customary for that type of work[ ]" and "[the d]efendant ha[d] not contested this specific finding or otherwise suggested that plaintiff's counsel ha[d] charged excessively."
 
 Id
 
 . There are no such findings in the present case, and the lack of findings prevents this court from determining whether the trial court abused its discretion in awarding attorney's fees. The attorney's fees award must be remanded for additional findings.
 

 III.
 
 Conclusion
 

 For the reasons discussed, we vacate and remand for further proceedings and additional findings of fact to support the awards of child support, alimony, and attorney's fees.
 

 VACATED AND REMANDED.
 

 Judges DILLON and MURPHY concur.