An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-695

Filed 19 November 2025

Mecklenburg County, No. 19CVD015899-590

WENDY STRICKLAND, Plaintiff/Mother,

v.

JAMES McLACHLAN, Defendant/Father.

Appeal by defendant from order entered 21 October 2022 by Judge Tracy H. Hewett and order entered 15 August 2023 by Judge Elizabeth Trosch in Mecklenburg County District Court. Heard in the Court of Appeals 21 May 2025.

> *James, McElroy & Diehl, P.A., by Preston O. Odom, III, Haley E. White, and Kristin R. Foarde, for plaintiff-appellee.*
>
> *Jonathan McGirt for defendant-appellant.*

ZACHARY, Judge.

Defendant James McLachlan ("Defendant/Father") appeals from the trial court's permanent child support order and its order dismissing his Rule 52 and Rule 59 motions without prejudice. After careful review, we vacate the permanent child support order and remand for a new hearing.

## I. Background

Plaintiff Wendy Strickland ("Plaintiff/Mother") and Defendant/Father married in 2010, had two children, and separated in 2017. On 12 July 2019, the parties entered into an agreement that provided for, *inter alia*, temporary child support payable by Defendant/Father to Plaintiff/Mother pending mediation. On 13 August 2019, Plaintiff/Mother filed a complaint seeking the entry of a consent order incorporating the terms of the parties' agreement regarding permanent child custody, which the trial court entered on 9 September 2019.

After the parties came to an impasse at mediation, Plaintiff/Mother filed a motion in the cause on 4 August 2020, seeking temporary and permanent child support. The court entered a consent order regarding temporary child support on 10 December 2020, providing, *inter alia*, that Defendant/Father pay temporary child support to Plaintiff/Mother of $4,000.00 per month. The court also ordered Defendant/Father to pay "$2,000.00 in temporary cash child support arrears for the months of August and September 2020," to be paid to "Plaintiff/Mother no later than October 15, 2020."

On 4 November 2021, Plaintiff/Mother's claim for permanent child support came on for hearing before the Honorable Tracy H. Hewett in Mecklenburg County District Court. On 11 January 2022, Judge Hewett provided the parties with her initial ruling, together with notes to guide the parties' counsel in drafting an order. Proposed drafts and revisions were exchanged between the parties and Judge Hewett over the following months. At a certain point, Judge Hewett informed the parties

"that she was no longer allowed to handle any hearings the rest of the year, including any posttrial motions," as she would be retiring on 31 December 2022.

On 21 October 2022, the trial court entered a permanent child support order. Regarding the calculation of child support, and specifically Defendant/Father's gross monthly income as part of that calculation, Judge Hewett first determined that although the North Carolina Child Support Guidelines ("the Guidelines") did not apply to this case, they nevertheless offered helpful guidance:

> 10. This is a non-Guidelines case because the parties' combined gross income exceeded the applicable monthly threshold at all material times. As such, the [c]ourt has made findings with regard to the earnings of the parties and other factors the [c]ourt must consider in determining child support including the estates, conditions, accustomed standard of living of the children and the parties and other facts particular to this case.

> 11. While this is a non-Guidelines case, the . . . Guidelines provide guidance to this [c]ourt. The [c]ourt finds it logical and appropriate to use the income shares model as provided in the . . . Guidelines in determining the appropriate amount of child support necessary to meet the minor children's reasonable needs.

Judge Hewett then determined that the children had been accustomed to a high standard of living due to Defendant/Father's income:

> 14. Plaintiff/Mother's employment income and her interest and dividend income, while not negligible, do not rise to the level that Defendant/Father has been able to provide such that the standard of living to which the family, including the two (2) minor

children, became accustomed was high.

15. Plaintiff/Mother's income from all sources is not sufficient to cover her and the minor children's reasonable needs and expenses. Plaintiff/Mother and Defendant/Father have both been using funds from their individual estates to subsidize the children's reasonable needs and expenses.

16. During the marriage, the parties and the minor children lived an affluent lifestyle.

Judge Hewett next explained Defendant/Father's "unique" and "lucrative" earnings history that led to his "irregular income":

24. Defendant/Father has a unique and sought-after skill set in software development that he has used as a lucrative employee and business owner. Defendant/Father's abilities have led beyond a typical employee-employer situation. Defendant/Father has himself, and with others, developed a single lucrative and innovative product and software. Prior to this successful company, Defendant/Father was involved with four (4) other startup companies, none of which were successful. Defendant/Father not only developed an innovative product, but also is very savvy in marketing, investing, and forming companies. This high-level transaction has paid off well but also has "down times" when an unexpected pivot is required to salvage a product or plan. Defendant/Father is in what he believes to be the final push toward another successful product. During the "down time," Defendant/Father has not been taking a salary and the product at hand, a business communication iOS application, is not generating sales.

25. Prior to Defendant/Father's one successful business, there were many failed businesses. The only successful business was one in which

Defendant/Father was a 1/3 partner in the company whereby he and the partners would split the profits on a monthly basis. This company no longer exists.

26. Defendant/Father is ninety percent (90%) finished with the business communication iOS application, and it has been submitted to Apple. Defendant/Father is hopeful that the product will be generating sales in Q2 of 2022. Defendant/Father has not engaged Beta users yet. [E]ven once he does so, he will not be generating money.

27. Around June 2018, Defendant/Father sold his 1/3 business interest in Origin Ads, LLC d/b/a BriteVerify. As a result, Defendant/Father received approximately $13,829,874.00. Defendant/Father owned this company prior to marriage. On November 6, 2018, Plaintiff/[Mother] received approximately $7,000,000.00 as part of the resolution of the parties' equitable distribution claims. Plaintiff/Mother's funds have been managed and invested with Morgan Stanley.

28. All of the above is compelling evidence that Defendant/Father is not intentionally depressing his income to avoid paying child support. Nor does the evidence show that Defendant/Father is acting with a significant degree of indifference or disregard for the welfare of his children. Therefore, the [c]ourt cannot impute income to him.

29. Given the nature of Defendant/Father's field and business, including the periods of high earned income and "down time," it is appropriate to average his irregular income over a specified period of time.

Accordingly, Judge Hewett applied an income-averaging calculation to determine Defendant/Father's monthly income:

30. The years of 2013 to 2017 are relevant to this determination, as the parties separated in

September 2017, and the minor children were born in 2013 and 2015, respectively.

31. From 2013 to 2017, Defendant/Father's annual earned income ranged from a low of $785,620.00 to a high of $2,524,287.00. In 2018, Defendant/Father's earned income was approximately $570,437[.00], in 2019 Defendant/Father's earned income was $0.00 and in 2020, Defendant/Father's earned income was $0.00. Out of Defendant/Father's 24 years of employment, there were only 8 years where he earned over $200,000.00. Those 8 years correspond with the time he was a 1/3 partner in BriteVerify.

32. By averaging Defendant/Father's income solely from 2013 to 2017, his average annual earned income was $1,800,093.00, or $150,007.78 per month.

33. This average monthly income of $150,007.78, plus (a) his current reported interest and dividend income of $28,773.58 per month; and (b) his current reported other income of $2,171.19 per month cited on Defendant/Father's Financial Affidavit, results in a combined monthly gross income of $180,952.55.

. . . .

35. After the monthly deductions of $66,952.44 for Federal taxes; $9,500.01 for State taxes; $1,475.60 for Social Security; and $5,410.47 for Medicare tax and Additional Medicare tax, Defendant/Father's monthly net income is $97,614.02.

. . . .

38. The parties' respective estates are large and similar in value. Notably, Defendant/Father invested approximately $1,000,000.00 in his company rather than investing in the stock market because he anticipated a more significant return would result from investing in his company.

Judge Hewett also found that the family's high standard of living continued in the years following Defendant/Father's sale of his business interest and leading up to the date of hearing:

> 41. Defendant/Father met his now-wife . . . in June 2019. He began fully financially supporting [her] within days of meeting her . . . .
>
> 42. Defendant/Father also provides monetary support to [his new wife]'s daughter during [her] custodial time of one weekend per month and the summer.
>
> 43. In 2019, Defendant/Father spent an average of $65,000.00 per month. This amount includes the cash child support he paid directly to Plaintiff/Mother, the money he spent directly for the benefit of the children, and the money he was investing into his new company.
>
> 44. From August 31, 2020 to September 30, 2021, Defendant/Father spent an average of $58,300.00 per month. This amount includes the cash child support he paid directly to Plaintiff/Mother, the money he spent directly for the benefit of the children, and the money he was investing into his new company. In addition, this amount accounts for the $91,000[.00] he paid to Plaintiff/Mother when their mountain house sold.
>
> . . . .
>
> 46. As set forth above, despite his business being in a "down time" and not taking a salary, Defendant/Father has continued to enjoy the high standard of living which was established during the marriage, and he has enabled his new wife and her child to enjoy that same high standard.
>
> . . . .

49. The minor children in [Plaintiff]/Mother's primary care have recurring monthly needs and expenses.

50. Considering the parties' testimony and their verified Financial Affidavits, along with the other competent evidence presented, the [c]ourt finds that the reasonable needs and expenses of the minor children total $26,627.26 per month.

Judge Hewett thus calculated the parties' monthly gross incomes and relative responsibilities for the children's monthly needs and expenses:

51. Plaintiff/Mother earns 4.3% and Defendant/Father earns 95.7% of the combined monthly gross income of the parties. As such, it is reasonable and appropriate that Plaintiff/Mother should be responsible for 4.3% of the minor children's reasonable monthly needs and expenses and Defendant/Father should be responsible for 95.7% of the minor children's reasonable monthly needs and expenses.

. . . .

57. Plaintiff/Mother has total reasonable monthly expenses for the minor children in the amount of $13,739.85.

. . . .

61. Defendant/Father has total reasonable monthly expenses for the minor children in the amount of $11,220.12.

62. The minor children have total combined monthly reasonable needs and expenses in the amount of $24,959.97 per month.

63. Plaintiff/Mother's 4.3% share of the minor children's needs and expenses is $1,073.28. Defendant/Father's 95.7% share of the minor

children's needs and expenses is $23,886.69.

64. Plaintiff/Mother incurs expenses on behalf of the minor children in the amount of $13,739.85 per month, which is $12,666.57 more than her 4.3% share. There is a deficiency of $12,666.57 per month in necessary and reasonable support of the minor children while in Plaintiff/Mother's care.

65. Defendant/Father pays $11,220.12 per month on behalf of the minor children, which is $12,666.57 less than his 95.7% share.

66. After subtracting Defendant/Father's total monthly expenses from his net income, Defendant/Father has the ability to pay $12,666.57 to Plaintiff/Mother for his portion of the support necessary to meet the minor children's monthly reasonable needs and expenses.

67. Based on the minor children's actual needs and expenses for their health, education, and welfare, Plaintiff/Mother's income, Defendant/Father's income, the estates and conditions of the parties, and the accustomed standard of living of the minor children, Defendant/Father shall pay $12,666.57 per month in cash permanent child support to Plaintiff/Mother effective as of August 1, 2020.

. . . .

73. Using the income calculation for Defendant/Father's income as found by this [c]ourt by averaging his income from 2013 through 2017, the parties have the ability to support the minor children as set forth herein and to pay the sums set out in this Order.

74. Using the income calculation for Defendant/Father's income as found by this [c]ourt by averaging his income from 2013 through 2017, Defendant/Father is capable of providing the

permanent child support ordered herein . . . .

Based on these findings of fact and others, the trial court concluded, *inter alia*, that "[t]he reasonable child support Plaintiff/Mother and Defendant/Father are obligated to pay for their minor children is not controlled by the . . . Guidelines, in that the combined gross monthly income of the parties is in excess of the applicable monthly threshold at all material times." The court further concluded: "Considering the facts and circumstances of this case, including the accustomed standard of living of the parties and the minor children and the estates, earnings and conditions of the parties, the appropriate amount of prospective monthly child support for Defendant/Father to pay to Plaintiff/Mother is $12,666.57" and that "[i]t is appropriate that Defendant/Father pay to Plaintiff/Mother permanent child support arrears in the sum of $178,300.09 for the arrears accrued for the months of August 2020 through May 2022."

On 31 October 2022, Defendant/Father filed motions to amend the permanent child support order pursuant to Rule 52; for a new trial pursuant to Rules 59 and 63; and to stay execution and enforcement of the permanent child support order pending the resolution of the other motions pursuant to Rule 62. Judge Hewett did not rule on Defendant/Father's motions before she retired on 31 December 2022.

On 3 March 2023, counsel for the parties appeared for an in-chambers conference before the Honorable Elizabeth Trosch, who determined that Defendant/Father's Rule 52 and Rule 59 motions should be dismissed without

prejudice; Chief Judge Trosch entered an order to that effect on 15 August 2023. Defendant/Father filed timely notice of appeal from the permanent child support order and the order dismissing his Rule 52 and Rule 59 motions without prejudice. *See* N.C.R. App. P. 3(c)(3).

## II. Discussion

Defendant/Father raises several issues on appeal from the permanent child support order: he argues that the trial court erred by (1) applying an "averaging methodology in the calculation of [his] income" (internal quotation marks omitted), (2) treating this matter as a non-Guidelines case, and (3) improperly assessing the parties' relative abilities to contribute to child support. Further, Defendant/Father asserts that, because of "the unusual procedural posture of this case, this Court should conduct an independent de novo review of [his] original Rule 52 and Rule 59 motions." (Italics omitted).

Of these, the dispositive issue on appeal is that the trial court erred in its application of income-averaging when calculating Defendant/Father's monthly income. In light of Judge Hewett's retirement, the appropriate disposition of this appeal is to remand for a new hearing. As such, we need not reach the other issues raised by Defendant/Father on appeal.

## A. Standard of Review

Ordinarily, "[t]he standard of review of a trial court's determination of child support is abuse of discretion." *State ex rel. Midgett v. Midgett*, 199 N.C. App. 202,

205, 680 S.E.2d 876, 878 (2009). However, "[b]ecause the determination of gross income requires the application of fixed rules of law, it is properly denominated a conclusion of law rather than a finding of fact." *Id.* at 206, 680 S.E.2d at 879 (citation omitted). Therefore, this Court conducts de novo review of a trial court's determination of a party's gross income in child support cases. *Eidson v. Kakouras*, 286 N.C. App. 388, 405, 880 S.E.2d 760, 772 (2022).

## B. Analysis

Defendant/Father first argues that "[t]he trial court erred as a matter of law in its application of an 'averaging' methodology in the calculation of [his] income." We agree.

Our General Statutes provide that an award of child support must "meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case." N.C. Gen. Stat. § 50-13.4(c) (2023). "This Court has explained that the ultimate objective in setting awards for child support is to secure support commensurate with the needs of the children and the ability of the obligor to meet the needs." *Wise v. Wise*, 264 N.C. App. 735, 738, 826 S.E.2d 788, 791 (2019) (cleaned up). "To support the trial court's award of . . . child support, the trial court's findings must be sufficiently specific to allow the reviewing court to determine if they are supported by competent evidence and support the trial court's award." *Id.* at 739,

826 S.E.2d at 792.

It is well settled that "in general, a party's ability to pay child support is determined by that party's actual income *at the time the award is made.*" *Id.* at 745, 826 S.E.2d at 795 (emphasis added) (cleaned up). "Although this means the trial court must focus on the parties' current income, past income often is relevant in determining current income." *Simms v. Bolger*, 264 N.C. App. 442, 453, 826 S.E.2d 522, 530 (2019) (citation omitted).

For instance, "[t]his Court has . . . allowed the trial court to average prior years' incomes in cases where the trial court found the evidence of actual income [wa]s unreliable or otherwise insufficient." *Wise*, 264 N.C. App. at 745, 826 S.E.2d at 796. Additionally, income-averaging "is permissible where the [party's] income is highly variable or seasonal." *Simms*, 264 N.C. App. at 453, 826 S.E.2d at 530. "What matters in these circumstances is the reason *why* the trial court examine[d] past income; the court's findings must show that the court used this evidence to accurately assess current monthly gross income." *Id.* (citation omitted).

In this case, the court determined that it was "appropriate to average [Defendant/Father's] irregular income over a specified period of time" because of "the nature of [his] field and business, including the periods of high earned income and 'down time.'" Yet, the trial court made no findings of fact regarding Defendant/Father's actual income at the time the award was made, nor did it make sufficient findings to explain how the range of years that the court chose for averaging

Defendant/Father's past income "accurately assess[ed his] current monthly gross income." *Id.* (citation omitted). The court found that Defendant/Father's earned income for 2019 and 2020 was $0.00 and made no finding as to his income for 2021; the court merely noted that Defendant/Father was "hopeful that [his next] product w[ould] be generating sales in Q2 of 2022."

To support its selection of the appropriate period of time for this averaging, the court reasoned that "[t]he years of 2013 to 2017 are relevant to this determination" and calculated that "solely from 2013 to 2017, [Defendant/Father's] average annual earned income was $1,800,093.00, or $150,007.78 per month." But, as Defendant/Father correctly observes, the court's averaging calculation "completely omit[ted] the three most recent years' 'actual income' from consideration," and was "based upon [his] average gross earned income for a period of five years (i.e., 2013-2017) that long preceded the date of [the hearing]." (Italics omitted).

The court did not sufficiently explain how averaging Defendant/Father's monthly income over a period that excluded the three most recent years—up to and including the date of the hearing—would "accurately assess [Defendant/Father's] current monthly gross income." *Id.* (citation omitted). This is significant, given that the court's justification for income-averaging was that "the nature of [his] field and business . . . includ[ed] . . . periods of high earned income and 'down time.'" The court's selection of years 2013 to 2017, however, included *only* "periods of high earned income" while entirely excluding "down time." This range appears to be inconsistent

with the trial court's assessment of Defendant/Father's income as "irregular"; although the court found that Defendant/Father's income history included both "boom" and "bust" years, the court sampled only the "boom" years.

We acknowledge that "this Court has afforded the trial court discretion in selecting the number of prior years' income it considers" when employing income-averaging to determine a party's income. *Wise*, 264 N.C. App. at 747, 826 S.E.2d at 797. This determination is appropriately made on an individualized, case-by-case basis. Isolating the period of years 2013 to 2017 for income-averaging "may be a proper exercise of the trial court's discretion." *Id.* Nevertheless, this Court "cannot make that determination without additional findings setting forth the trial court's reasons for choosing [those] years as its measure of time" for averaging Defendant/Father's monthly income based on the facts of this case. *Id.*

Typically, when faced with error in the calculation of child support, the appropriate disposition would be to remand for the trial court to enter a new child support order, with findings of fact and conclusions of law regarding Defendant/Father's income based on the evidence in the record and consistent with this opinion. Yet, Judge Hewett's retirement from the bench complicates the matter.

Rule 63 provides, in pertinent part:

> If by reason of . . . retirement, expiration of term, . . . or other reason, a judge before whom . . . a hearing has been held is unable to perform the duties to be performed by the court under these rules after a . . . hearing is otherwise concluded, then those duties, including entry of judgment,

may be performed:

> . . . .
>
> > (2) In actions in the district court, by the chief judge of the district . . . .
>
> [i]f the substituted judge is satisfied that he or she cannot perform those duties because the judge did not preside at the trial or hearing or for any other reason, the judge may, in the judge's discretion, grant a new trial or hearing.

N.C. Gen. Stat. § 1A-1, Rule 63.

Our Supreme Court has "held that one of the duties to be performed by the court under these rules . . . is finding the facts, stating the conclusions of law, and directing the entry of judgment pursuant to Rule 52." *In re K.N.*, 381 N.C. 823, 828, 874 S.E.2d 594, 598 (2022) (cleaned up); *see* N.C. Gen. Stat. § 1A-1, Rule 63. The Supreme Court "has interpreted Rules 52 and 63 together to provide that a substitute judge cannot find facts or state conclusions of law in a matter of which he or she did not preside." *K.N.*, 381 N.C. at 828, 874 S.E.2d at 598–99 (citation omitted). Accordingly, Rules 52 and 63 prevent us from remanding without ordering a new hearing.

"[I]t is unfortunate that a new hearing is required. But . . . we are constrained to vacate the order on appeal and to order a new hearing." *Hudson v. Hudson*, 293 N.C. App. 87, 91, 900 S.E.2d 131, 134 (2024). Because we conclude that the trial court's calculation of Defendant/Father's monthly income was not supported by its findings of fact and because a new hearing is required on remand, we need not

address Defendant/Father's arguments regarding the applicability of the Guidelines or the determination of the parties' relative abilities to contribute to child support, as the substitute judge on remand may reach different conclusions as to those issues depending on the recalculation of Defendant/Father's income. Additionally, because we are vacating the permanent child support order, we need not address Defendant/Father's argument regarding the denial of his Rule 52 and Rule 59 motions. *See Sfreddo v. Hicks*, 266 N.C. App. 84, 100–01, 831 S.E.2d 353, 364 (2019).

### III.    Conclusion

For the foregoing reasons, we vacate the permanent child support order and remand for a new hearing.

VACATED AND REMANDED.

Judges GORE and FREEMAN concur.

Report per Rule 30(e).